SELKREGG et al. v. HAMILTON BROS.

(District Court, W. D. Pennsylvania. March 22, 1906.)

No. 639.

1. BANKRUPTCY—INVOLUNTARY PROCEEDINGS—DISMISSAL—SEIZURE OF PROPERTY—BONDS—LIABILITY OF CREDITORS.

Where, pending involuntary bankruptcy proceedings, the creditors secured a warrant under which the marshal took possession of the alleged bankrupts' canning factory, and a bond was executed, as required by Bankr. Act, 1898, § 3e [U. S. Comp. St. 1901, p. 3423], conditioned for the payment of all costs, expenses, and damages caused by the seizure, taking, and detention of the property, on the dismissal of the bankruptcy proceedings, the alleged bankrupts could only recover on the bond such costs, expenses, and damages as were incident to the taking and withholding of the property, as distinguished from costs, expenses, and damages incident to the institution of bankruptcy proceedings.

**2. SAME—INJURY TO PROPERTY.**
> Where the marshal, while in possession of the property, permitted certain pipes thereon to freeze and burst, the alleged bankrupts were entitled to recover damages sustained thereby on such bond, notwithstanding they had free access to the factory, the petitioning creditors, in taking possession of the property through the marshal, assuming full responsibility for its care.

L. Rosenzweig, for Hamilton Bros.
Frank Gunnison, for petitioning creditors.

ARCHBALD, District Judge.[1] On October 23, 1899, proceedings were instituted in this court by the creditors of Hamilton Bros. to have them declared bankrupts; and the same day, upon affidavit that they were insolvent and were disposing of their property, to the serious detriment of the petitioners, a warrant was directed to issue to the marshal, under which he took possession of their canning factory at Northeast, Erie county, Pa., where they were in business. Accompanying this, a bond was filed in the sum of $1,000, with two good and sufficient sureties approved by the court, conditioned as required by the statute (Bankruptcy Act July 1, 1898, c. 541, § 3e, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]) for the payment to the respondents, in case the proceedings should be dismissed, of all costs, expenses, and damages, occasioned by the "seizure, taking, and detention" of the property. The respondents contested their bankruptcy, and, the petitioning creditors not being able to show that they were insolvent, or had committed an act which made them liable, on December 5, 1899, the proceedings were dismissed. Thereupon, pursuing the course marked out by the statute (section 3e), the respondents petitioned the court to fix and allow the amount which should be paid by the obligers on the bond by reason of the warrant to the marshal; and the case, having been referred to a special master, comes up now on exceptions to his report.

The master finds that the respondents are entitled in this proceeding to an allowance (a) for such costs, by reason of the filing of the petition and its dismissal, as would be allowed to a party recovering in a suit in equity, citing rule 34 (32 C. C. A. xxxiii; 89 Fed. xiii; 18 Sup. Ct. ix), but not specifying them; (b) to such costs, counsel fees, and expenses as were incurred as a result of the seizure and detention of their property by the marshal, which he was not, however, able to fix for want of evidence; (c) to damages to the extent of $53, caused by the freezing and bursting of the pipes in the canning factory, while the marshal was in possession—this being the only specific sum shown, out of the $20,000 claimed, independent of what was to be assigned to the bringing of the bankruptcy proceedings. Following the terms of the statute, the bond, on the security of which the warrant of the marshal was issued, was conditioned, as already stated, for the payment of "all costs, expenses, and damages, caused by the seizure, taking and detention of the property," in case the petition was dismissed by which the proceedings in bankruptcy were instituted. This was the undertaking of the obligers, and to this their liability is to be

[1] Specially assigned.

confined in the present proceeding whatever may be that of some of them, who were petitioning creditors, outside of it, by reason of their unsuccessful attempt to put the respondents into bankruptcy. The bond, as it is to be remembered, is given solely for the purpose of indemnifying the alleged bankrupts for taking their property out of their hands before there had been an adjudication against them; and it is only by failing to keep this in view that any confusion arises. The master has lost sight of it slightly in holding that, as noted above, the respondents are entitled to such costs as would be allowed to a party in equity in case of a dismissal. These costs, no doubt, are to be taxed in their favor, against the petitioning creditors, by the clerk, in the main proceedings. But they do not come in here, where we are fixing the responsibility of the bondsmen, both principals, and sureties, which is another matter. The costs to be covered in the latter case are those which are strictly incident to the seizure proceedings, and ordinarily in any event would not amount to much. Where, as is often the case, application for a warrant to the marshal, like that for the appointment of a receiver, is heard ex parte, there would be nothing more than those for the filing of the moving papers, taken care of at the time by the parties. Where, however, the application is contested, either at the outstart or afterwards on motion to vacate, they would include all that could be recovered under similar circumstances. if the case were in equity. Rule 34 (32 C. C. A. xxxiii; 59 Fed. xiii; 18 Sup. Ct. ix); Collier (5th Ed.) 615. In re Wolpert, 1 Am. Bankr. Rep. 436. In the present instance there was no contest over the issuing of the warrant, and so far as appears there were no costs because of it to come in here. But the master has allowed nothing specifically upon this score, so that this mistake is not material, except as the failure to note it might lead on to others.

Counsel fees stand exactly the same as costs, and are to be similarly disposed of. The respondents are entitled to recover whatever was incurred by them on that account, because of the seizure and detention of the property, but not outside of that. They can claim nothing, for instance, for the assistance of counsel in defending and successfully resisting bankruptcy; and as this is all that was shown, and practically makes up the whole of this part of their claim, there is nothing to be allowed under that head. And the same is true, also, as to the matter of expenses. The chief item, however, put forward by the respondents, is for damages. But here, again, the result of the institution of the proceedings in bankruptcy is not to be confounded with the seizure under the warrant to the marshal. The one was no doubt calculated to affect the credit, and so may have worked the financial injury of the firm in a way that may make the petitioning creditors liable to action. But these consequential damages are quite different from those due to the taking possession of their canning factory, by which their business was directly interfered with, if that was in fact the case. Both steps may have combined to work their injury, but each in its own way, and only that which is directly attributable to the one which we are considering is recoverable for here. Upon that point it is to be observed that already, early in October, the same month in which the

bankruptcy proceedings were instituted, by reason of the discouragement of the season, if not of the loss of the cans which had been taken from them in the replevin suit by the Fredonia Manufacturing Company, the factory was at a standstill. The respondents, having disposed of their entire output, declined to take the late crop from customers, and rented out the lower portion of the building for the storage and packing of grapes, for which it was used during the greater part of the time it was in the hands of the marshal, and of which they had the benefit. They were delayed in cleaning up the establishment and repairing the machinery after that when they came to make sale of the property subsequently, but this did not amount to much, and nothing specific on account of it is shown. This leaves nothing but the $53 allowed by the master by reason of the freezing and bursting of the pipes while the marshal was in charge.

It is contended by the petitioners that the respondents had free access to the factory, and ought to have known of the danger better than the marshal, and taken steps to prevent it. But I agree with the master that the draining of the pipes, to keep them from freezing, was sufficiently obvious, and that, in taking the property out of their hands as they did, the petitioning creditors assumed full responsibility for its care, relieving the respondents from looking after it.

The results reached by the master being thus substantially correct, the exceptions are overruled, and the costs, counsel fees, expenses, and damages for which the obligers in the bond are liable are fixed at $53, as recommended by the master in his report.