---

## In re WARD.

(Circuit Court of Appeals, Third Circuit. February 19, 1912.)

No. 1,506.

EVIDENCE (§ 574*)—EXPERTS—WEIGHT.

> On an issue of the insanity of an alleged bankrupt, the evidence of his acts, speech, demeanor, changed habits, and the testimony of physicians who had had him under treatment was of greater weight than the hypothetical testimony of alienists.
>
> [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2400; Dec. Dig. § 574.*]

Appeal from the District Court of the United States for the District of New Jersey.

In the matter of bankruptcy proceedings of William R. Ward. From a decree dismissing an involuntary bankruptcy petition (194 Fed. 174), the creditors appeal. Affirmed.

See, also, 161 Fed. 755; 194 Fed. 179.

Robert R. Howard, for appellants.

Vredenburgh, Wall & Carey, for guardians of Wm. R. Ward.

Before GRAY and BUFFINGTON, Circuit Judges, and YOUNG, District Judge.

BUFFINGTON, Circuit Judge. In the court below, an involuntary petition in bankruptcy was filed against William R. Ward. Subsequently, Mr. Duffy, who had thereafter been appointed by said court guardian ad litem for Mr. Ward and a committee of persons who had been appointed guardians of Ward's person and property in a lunacy proceeding thereafter instituted in the orphans' court of Essex county, N. J., made answer to such petition in bankruptcy. By this answer, inter alia, the insanity of Ward when the acts of bankruptcy were committed was alleged, and the alleged acts of bankruptcy and the insolvency denied. The case turns on the insanity of Ward.

Trial by jury having been demanded and waived, the parties stipulated the issues should be tried by the court, which trial would be under section 18d of the bankrupt law (Act July 1, 1898, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3429]). In pursuance thereof, witnesses were sworn and heard by the court; Judge Lanning presiding for several days. He then entered an order referring the matter to a special master, "to consider said petition, answer, and replication, and to hear such further testimony as may be produced by the parties hereto, and forthwith certify such testimony to this court for such action thereon as to this court may seem just and proper."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Subsequently, and after many witnesses had been examined under this order, the court made a further and ex parte order:

"That said matter and all testimony heretofore taken herein be referred to Edwin G. Adams, special master, for his consideration, and to take such further testimony as may be offered, to the end that he may report the same in its entirety, with his recommendations thereon, to this court."

On the special master's reporting this latter order to the parties, this protest was recorded:

"The guardians of the alleged bankrupt object to the jurisdiction of the master to try and determine the issues in this cause at this time under the circumstances of this trial; it appearing that trial by jury was waived and that Judge Lanning should try the case."

This objection was overruled by the master, who proceeded to hear testimony and thereafter to make findings of fact and conclusions of law and file a report wherein he found Ward's insanity was not established, that he was insolvent, and had committed the acts of bankruptcy charged. To this report the guardians, still insisting on their protest, filed exceptions. The court, after hearing, delivered an opinion in which the testimony was exhaustively discussed and later entered a decree dismissing the petition in bankruptcy. While the assignments of error are directed to the action of the court in sustaining the exceptions to the master's report, there is none assigning for error the court's action in decreeing the dismissal of the bill. The status of the case now being a decree, unappealed from, dismissing the bill, it would seem to follow that a discussion of any questions preceding such decree is academic. In view, however, of the expense of preparing the record, and at the request of counsel, we pass to a consideration of the case on the merits.

Counsel on both sides have very ably presented their views and authorities on the effect of a master's report, both before the lower and this court and the conclusive effect of the state decree in lunacy. Without entering into a study of these interesting legal questions, we have, in view of the questionable scope of the powers conferred on the master, the fact that a number of the witnesses were not examined before him, and of the protest against the exercise of any judicial power by him, reviewed the testimony ourselves, aided by the master's report and the opinion of the court below. That examination irresistibly leads us to the conclusion that at the time of the commission of the alleged act of bankruptcy Ward was insane. Whatever may be the rival contention of alienists—and in that respect we find the to be looked for difference—the lay mind is very apt to rely on the testimony of witnesses who prove the conduct, actions, and speech of a man. In this case, Ward's conduct, his acts, his speech, his demeanor, his changed habits are proved by the uncontradicted evidence of the large number of witnesses who observed him in his daily walk and conversation and who saw the change coming over him. The affirmative and united testimony of those who thus frequently saw him, and whose interest was challenged by neighborly intercourse, is more persuasive than the somewhat negative and isolated observation of those whose intercourse with him was confined to a single transaction in

which no aberration was apparent. While both sets of witnesses are equally sincere and truthful, the comparative weight of their testimony is as different as were their fields of observation. As witnesses whose testimony is of the general character noted, we may refer to that of his two family physicians, Bingham and Fewsmith; his counsel, Duffy; his clergyman, Hunter; his wife, daughter and brother; his neighbors, Miller, Osmund, and Reeve; his business acquaintances, Baldwin, Atha, Roe, Lent, and McBride; his sanitarium physicians, Prout and Gordon; and his coachman, Baker. These different witnesses covered a wide range of observation, and the facts to which they testified leave no uncertain conviction in this court's mind that no error was committed by the court below. Moreover, the clear weight of the alienists' and physicians' testimony is to the same effect. Of the alienists called by the respondent, two of them, as well as both the general medical practitioners, had Ward under treatment, and their testimony has therefore correspondingly greater weight than the hypothetical testimony produced by the petitioners.

Finding no error below, the decree is affirmed.