---

### In re WARD.

#### (District Court, D. New Jersey. March 13, 1913.)

1. BANKRUPTCY (§ 474*)—GUARDIAN AD LITEM FOR BANKRUPT—COMPENSATION.
   Where a guardian ad litem was appointed for a bankrupt, as authorized by equity rule 87 (29 Sup. Ct. xxxvii), to defend an involuntary bankruptcy petition, because of the alleged mental incompetency of the bankrupt, such guardian ad litem must look to the estate of his ward for compensation, and cannot recover it from the unsuccessful petitioners in the bankruptcy proceeding; there being no provision in the Bankruptcy Act or in the general orders for any compensation to the bankrupt in case the petition against him is dismissed.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. § 474.*]

2. BANKRUPTCY (§ 476*)—INVOLUNTARY PETITION—DISMISSAL—COSTS.
   Bankr. Act July 1, 1898, c. 541, § 2, cl. 18, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3421), empowers the court to tax costs whenever allowed by law, and render judgment therefor against the unsuccessful party, or the successful party for cause, or in part against each, and against estates in bankruptcy. Section 3e provides that, when an application to take or hold property of an alleged bankrupt is made before adjudication, the petitioner shall file a bond, conditioned for payment, in case the petition is dismissed, of all respondent's costs, expenses, and damages occasioned by the seizure and detention of the property, and that in such case the respondent shall be allowed all costs, counsel fees, expenses, and damages occasioned by the seizure. General order 34 (89 Fed. xiii, 32 C. C.

A. xxxiii) declares that if the debtor resists an adjudication, and the court adjudges him a bankrupt, the petitioning creditors shall recover from the estate the same costs allowed to a successful party in a suit in equity, and if the petition is dismissed the debtor shall recover like costs from the petitioner. *Held* that, under section 3e, only such costs, counsel fees, expenses, and damages as are occasioned by the seizure and detention of the bankrupt's property can be recovered, and that the recovery of all other costs and expenses depends on their being brought within section 2, cl. 18, and general order 34, which are but declaratory of the general equity power relating, to costs.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 898, 899; Dec. Dig. § 476.*]

3. BANKRUPTCY (§ 477*)—INVOLUNTARY PETITION—CONTEST—EXPENSES.

Where an issue raised on an involuntary bankruptcy petition was referred to a master, and expenses incident to receivership and the taking of testimony were directed to be paid out of the funds in the possession of the receiver, such direction did not constitute an adjudication that they should ultimately be charged against the estate, but was merely provisional.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 900; Dec. Dig. § 477.*]

4. BANKRUPTCY (§ 474*)—INVOLUNTARY PETITION—CONTEST—SEIZURE AND DETENTION OF BANKRUPT'S PROPERTY—DAMAGES.

Where, on the filing of an involuntary bankruptcy petition, a receiver was appointed, and the property of the alleged bankrupt seized, damages occasioned by the seizure and detention of. the property were not recoverable, on a subsequent dismissal of the petition, against the petitioning and intervening creditors generally, but only against the creditor on whose application the property was seized.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. § 474.*].

5. BANKRUPTCY (§ 474*)—INVOLUNTARY PETITION—SEIZURE AND DETENTION OF PROPERTY—DAMAGES.

Bankr. Act July 1, 1898, c. 541, § 3e, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), providing for recovery from unsuccessful petitioners of damages occasioned by the seizure and detention of the bankrupt's property during the determination of the petition, has no application where the seizure and detention occasioned no loss, but rather had the effect of avoiding impending loss, in which case none of the costs and expenses incident to receivership could be charged against the applicant therefor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. § 474.*]

6. BANKRUPTCY (§ 474*)—INVOLUNTARY PETITION—DISMISSAL—COSTS—DIVISION.

General bankruptcy order 34 provides that guardians can recover only such costs as are allowed to a party recovering in a suit in equity. By Bankr. Act July 1, 1898, c. 541, § 2, cl. 18, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3421), the court in its discretion may impose costs allowed by law on one or the other of the parties, or part against each and part against the estate. Equity rule 67 (29 Sup. Ct. xxxiv) provides for the imposition as costs of the expense of taking depositions, and rule 82 (29 Sup. Ct. xxxvi) declares that the compensation to every master in chancery shall be fixed by the court in its discretion, and shall be charged to and borne by such parties as the court shall direct. Bankruptcy rule 16 provides that an allowance to a special master, in case the involuntary petition shall be dismissed, with costs, may be taxed against the petitioning creditors. *Held*, that where creditors of an alleged bankrupt instituted proceedings against him for an act which, if performed by a competent person, would have been an act of bankruptcy, but they were

defeated because the alleged bankrupt was suffering from a form of insanity which was such that to ordinary persons he would often appear normal, it was a proper case for division of costs and expenses; and hence no counsel fees would be allowed to the bankrupt's guardians, general or ad litem, as against the creditors, but they would be required to pay the fee of the special master and the cost of taking testimony, together with the usual taxed costs in favor of the guardians, the remaining expenses and disbursements to be paid out of the estate in the hands of the receiver.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 878–884; Dec. Dig. § 474.*]

In Bankruptcy. In the matter of bankruptcy proceedings against William R. Ward. A petition having been dismissed, the guardian ad litem and the general guardians of the bankrupt apply for compensation, reimbursement, etc. Application granted in part.

Vredenburgh, Wall & Carey, of Jersey City, N. J., for petitioners.
Robert R. Howard, of New York City, for petitioning creditors.
Riker & Riker, of Newark, N. J., for Merchants' National Bank, intervening creditor.
Wayne Dumont, of Paterson, N. J. (Louis H. Porter, of New York City, of counsel), for Alpha Portland Cement Co., intervening creditor.

RELLSTAB, District Judge. After the creditors' petition, praying that William R. Ward be adjudged a bankrupt, was dismissed upon the ground that he was insane at the time of the commission of the alleged act of bankruptcy, the guardian ad litem appointed to defend on behalf of said bankrupt, and the general guardians of the said bankrupt, who were subsequently permitted to intervene to make a like defense, presented their petitions; the former praying for an allowance of $5,000 as compensation for services rendered as such guardian ad litem, to be paid by the petitioning and intervening creditors, and the latter praying the court to fix the costs, counsel fees, expenses, and damages occasioned by the seizure, taking, and detention of the bankrupt's property by the receiver of this court at $11,063.20, to be paid by the same creditors.

*First, as to the guardian ad litem's claim for compensation:*
[1] This guardian was appointed pursuant to United States equity rule 87 (29 Sup. Ct. xxxvii), to defend on behalf of the bankrupt, because of the latter's alleged mental incapacity to defend for himself, and because there was then no general guardian of such bankrupt. He filed an answer, alleging, inter alia, that said Ward, at the time of the alleged act of bankruptcy, was so unsound of mind as to be incapable of committing such act.

His prayer for compensation is based on services alleged to have been rendered in preparing for and aiding in the defense. Upon the intervention of the general guardians and the filing by them of an answer, inter alia, raising the same mental irresponsibility, which took place before the taking of any testimony, the burden of defending the bankrupt passed to them; the guardian ad litem having no further duties to perform in that behalf.

Neither the Bankruptcy Act nor the general orders provide for any

compensation to the bankrupt in case the petition filed against him is dismissed; and as the guardian, general or ad litem, merely stands in the place and stead of the bankrupt, he cannot recover compensation for services rendered in his behalf from the unsuccessful petitioners. For such compensation he must look to the estate of his ward. The prayer of the guardian ad litem for compensation is dismissed.

*Second, as to the general guardians' claim for costs, etc.:*

[2] Section 2 of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421]) empowers the District Court to:

"(18) Tax costs, whenever they are allowed by law, and render judgments, therefor against the unsuccessful party, or the successful party for cause, or in part against each of the parties, and against estates, in proceedings in bankruptcy."

Section 3e provides:

"Whenever a petition is filed by any person for the purpose of having another adjudged a bankrupt, and an application is made to take charge of and hold the property of the alleged bankrupt, or any part of the same prior to the adjudication and pending a hearing on the petition, the petitioner or applicant shall file in the same court a bond with at least two good and sufficient sureties who shall reside within the jurisdiction of said court, to be approved by the court or a judge thereof, in such sum as the court shall direct, conditioned for the payment, in case such petition is dismissed, to the respondent, his or her personal representatives, of all costs, expenses, and damages occasioned by such seizure, taking and detention of the property of the alleged bankrupt. If such petition be dismissed by the court or withdrawn by the petitioner, the respondent or respondents shall be allowed all costs, counsel fees, expenses, and damages occasioned by such seizure, taking, or detention of such property. Counsel fees, costs, expenses, and damages shall be fixed and allowed by the court, and paid by the obligors in such bond."

General order 34 (89 Fed. xiii, 32 C. C. A. xxxiii) provides:

"In cases of involuntary bankruptcy, when the debtor resists an adjudication, and the court, after hearing, adjudges the debtor a bankrupt, the petitioning creditor shall recover, and be paid out of the estate, the same costs that are allowed to a party recovering in a suit in equity; and if the petition is dismissed the debtor shall recover like costs against the petitioner."

These provisions, taken together, reveal that a distinction is made in the matter of costs and expenses between those that are due to the court's taking over of the bankrupt's property and holding it in advance of adjudication and those which are incident to the litigation over such adjudication. Under section 3e, only such costs, counsel fees, expenses and damages as are occasioned by the seizure and detention of the bankrupt's property can be recovered. The recovery of the other costs and expenses depends upon their being brought within said section 2, cl. 18, and general order 34, which are but declaratory of the general equity power in relation to such costs, etc. In re Ghiglione (D. C.) 93 Fed. 186, 1 Am. Bankr. Rep. 580; In re Morris (D. C.) 115 Fed. 591; In re Lacov, 142 Fed. 960, 74 C. C. A. 130, 15 Am. Bankr. Rep. 290; In re Hines (D. C.) 144 Fed. 147, 16 Am. Bankr. Rep. 538; Selkregg v. Hamilton Bros. (D. C.) 144 Fed. 557, 16 Am. Bankr. Rep. 474; In re Chas. W. Aschenbach Co., 183

Fed. 305, 105 C. C. A. 517, 25 Am. Bankr. Rep. 502; In re J. A. Smith, 16 Am. Bankr. Rep. 478.

[3] The litigation over such charge of bankruptcy was protracted, pending which the court directed the receiver to pay the master for fees earned and expenses incurred in the taking, and making copies, of the testimony, sums aggregating $3,305.60, and to himself as compensation $1,500, and petty disbursements incident to the receivership of $329.94. An additional expense of $80 was incurred in taking testimony in the presence of the court before a reference was made to the master. No objection is made to the propriety of such disbursements, or to the reasonableness of such fees; but the creditors contend that the court, in directing such payments to be made out of the funds in the hands of the receiver, adjudicated that such disbursements be charged against the estate.

An examination of the orders pursuant to which such disbursements were made fails to disclose any adjudication as to what person or fund should be ultimately chargeable therewith. These orders were made in consideration of the convenience of the master and receiver. Neither was a party to the litigation; they were officers of the court, acting in its stead. To require them to await the final outcome of this protracted litigation was neither necessary nor just. The using of the bankrupt's property in meeting such disbursements was but provisional, and the orders were made at a time when the question of ultimate liability for such fees and expenses was not ripe for adjudication. Such liability is now for the first time ready for determination. Myers v. Dunbar, Fed. Cas. No. 9,990, 17 Fed. Cas. 1109; In re T. E. Hill, 159 Fed. 73, 86 C. C. A. 263, 20 Am. Bankr. Rep. 73.

[4] The general guardians' claim, it will be observed, is limited to such costs and expenses, etc., as were occasioned by the seizure and detention of the bankrupt's property. So taken, such claim is not recoverable against the petitioning and intervening creditors generally, as prayed, but only against the person upon whose application such property was seized, which in this case is but one of such creditors.

[5] The present case is one where the seizure and detention was more constructive than actual. The estate that stood in the name of the bankrupt at the time of the appointment of the receiver consisted almost entirely of marketable securities pledged as collateral for loans. The appointment was made in the midst of a financial crisis attended with a falling market, and the restraining orders that were issued coincident with said receivership prevented a sacrifice of said collateral, with the result that they were intact at the close of such receivership, with a market value considerably more than when such receivership began. Such results are not those aimed at in section 3e. This section created a new right in the debtor. He is to be reimbursed in case such seizure and detention occasioned him pecuniary loss. It has no application where the seizure and detention occasions no loss; and such section cannot be invoked to recover costs and expenses occasioned in making a successful defense to the charge of bankruptcy. As the taking over by the court of the bankrupt's property in this case had the effect of avoiding impending loss, and the restraints resulted

in actual gain, none of the costs and expenses incident to such receivership should be charged against the applicant for such receiver. However, the costs and expenses that, in a sense, may be said to have been occasioned by the seizing and detaining of the property, are but a small part of the whole expense incident to this protracted litigation. Outside of the receiver's fees and his petty disbursements, all the expenses incurred and almost all of the services rendered by counsel were in consequence of the contest over the question of adjudication; and as counsel of all the parties, in their arguments and briefs, have dealt with the recoverability of such expenses and fees generally, I will so treat them, regardless of the fact that the general guardians' prayer is limited to such as are recoverable under section 3e, and permit them to amend their petition in that particular.

[6] Under general order 34, the guardians can recover only such costs as "are allowed to a party recovering in a suit in equity." And by section 2, cl. 18, of the Bankruptcy Act, the court has a discretionary power to impose the costs "allowed by law" upon one or the other of the parties, or part against each and part against the estate. The eighth clause of United States equity rule 67 (29 Sup. Ct. xxxiv), concerning the taking of testimony, provides:

"The expense of the taking down of depositions by a stenographer and of putting them into typewriting or other writing shall be paid in the first instance by the party calling the witness, and shall be imposed by the court, as part of the costs, upon such party as the court shall adjudge should ultimately bear them."

And rule 82 (29 Sup. Ct. xxxvi) provides:

"The compensation to be allowed to every master in chancery for his services in any particular case shall be fixed by the Circuit Court, in its discretion, having regard to all the circumstances thereof, and the compensation shall be charged upon and borne by such parties in the cause as the court shall direct."

Bankruptcy rule 16 of this district, "Allowance to Special Master," is to like effect, providing:

"In case the petition in an involuntary proceeding be dismissed with costs such sum *may* be taxed against the petitioning creditors."

Ward, by his guardians, having successfully defended against the charge of bankruptcy, what in equity and good conscience should he recover in the way of costs from the unsuccessful parties? As already observed, the court found that Ward was insane when he committed the act which was made the basis of the charge of bankruptcy. It was an act, however, which rightfully challenged the attention of his creditors, and one which, in the absence of knowledge of his mental irresponsibility, would justify their characterizing it as an act of bankruptcy.

In such a situation, it cannot be justly said that all the costs and expenses incident to this litigation are due to the petitioning and intervening creditors' unwarranted charges. Ward's insanity was of such a character that to the ordinary person, including creditors, he would often appear to be normal. In re Ward, 194 Fed. 89, 114 C. C. A. 167; Id. (D. C.) 194 Fed. 174. Therefore a division between the parties of the costs and expenses is equitable. The Bankruptcy Act (except under

section 3c, supra), or the general orders, or the United States equity rules, make no provision for subjecting the unsuccessful parties to the payment of counsel fees. In re Morris (D. C.) 115 Fed. 591; In re Williams (D. C.) 120 Fed. 34; In re J. A. Smith, 16 Am. Bankr. Rep. 478.

A proper balancing of the equities, however, includes a consideration of such counsel fees, even though they cannot ordinarily be included in the costs (Oelrichs v. Spain, 82 U. S. [15 Wall.] 211, 21 L. Ed. 43; Tullock v. Mulvane, 184 U. S. 497, 22 Sup. Ct. 372, 46 L. Ed. 657; Fidelity Co. v. Bucki Co., 189 U. S. 135, 23 Sup. Ct. 582, 47 L. Ed. 744; Jacobus v. Monongahela Nat. Bank [C. C.] 35 Fed. 395; Gilbert v. Am. Surety Co., 121 Fed. 499, 57 C. C. A. 619, 61 L. R. A. 253; Lindeberg v. Howard, 146 Fed. 467, 77 C. C. A. 23, 8 Ann. Cas. 709), inasmuch as they are an expense that the litigation has entailed upon the bankrupt.

The following disposition of the costs and expenses, therefore, is deemed equitable in the circumstances: No counsel fees will be allowed to counsel for the guardians, general or ad litem, as against the creditors; and the creditors, original and intervening, are required to pay the sum of $3,305.60, the amount paid to the special master, and the sum of $80, incurred in the taking of testimony before the court in advance of the reference, together with the usual taxed costs in favor of both the guardian ad litem and the general guardians. The remaining expenses and disbursements, including those paid to the receiver, are to be paid out of the funds of the estate.