### In re WEISSBORD.

(District Court, D. New Jersey. April 21, 1917.)

1. BANKRUPTCY �köⁿ469—JURISDICTION—COSTS—IMPOSITION.

An involuntary petition in bankruptcy, upon which a receiver was appointed, was subsequently dismissed on the ground that the alleged bankrupt was not insolvent. He thereupon petitioned the court to allow costs, counsel fees, damages, and expenses occasioned from the seizure and detention of his property. Bankr. Act July 1, 1898, c. 541, § 3e, 30 Stat. 546 (Comp. St. 1916, § 9587), declares that, if such petition be dismissed, the alleged bankrupt shall be allowed all damages, etc., occasioned by the seizure of his property. Held that the bankruptcy court had jurisdiction of the parties and subject-matter for the purpose of determining whether

---

⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an act of bankruptcy had occurred, and so could allow such damages, costs, and expenses, notwithstanding the dismissal of the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 872.]

2. BANKRUPTCY ☞113—ADJUDICATION—DAMAGES.

Bankr. Act, § 3e, provides that whenever a petition is filed by any person for the purpose of having another adjudicated a bankrupt, and an application is made to take charge of and hold the\property of the alleged bankrupt, the petitioner or applicant shall file a bond with at least two good and sufficient sureties, to be approved by the court, in such sum as it shall direct, conditioned for the payment, in case such petition is dismissed, of all costs, expenses, and damages occasioned by such seizure, taking, and detaining of the property of the alleged bankrupt. The damages from the seizure of the property of an alleged bankrupt, together with the costs and expenses exceeded the amount fixed in the bond. *Held* that neither petitioner nor the sureties on the bond could be made liable for a sum greater than that fixed in the bond, under proceedings instituted by virtue of section 3e of the Bankruptcy Act.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 150.]

3. BANKRUPTCY ☞476—COSTS—ALLOWANCES.

In such case, the petition in bankruptcy having been dismissed, the alleged bankrupt is not entitled under section 3e to expenses incurred in procuring a dismissal of the petition, where there was no independent attempt to secure a discharge of the order appointing the receiver.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 898, 899.]

4. BANKRUPTCY ☞482(3)—COSTS—ALLOWANCES.

In such case, a proceeding to recover the costs, damages, and expenses resulting from the appointment of a receiver having been occasioned by the seizure of the alleged bankrupt's property, counsel fees on such proceeding may be awarded the alleged bankrupt under section 3e.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 874–876, 897.]

5. BANKRUPTCY ☞476—COSTS—ALLOWANCES.

In such case, costs of the second proceeding are not to be allowed by virtue of Bankr. Act, § 3e, but may be allowed under section 2, cl. 18 (Comp. St. 1916, § 9586), giving the bankruptcy court jurisdiction to tax costs against the unsuccessful party, as well as General Order 34 (89 Fed. xiii, 32 C. C. A. xxxiii), making similar provisions.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 898, 899.]

6. BANKRUPTCY ☞113—FEES—ALLOWANCES.

An involuntary petition, upon which a receiver was appointed, was dismissed, and after dismissal one of the petitioning creditors recovered a judgment against the bankrupt. Execution on such judgment was restrained, on the application of the attorney for the alleged bankrupt, pending the bankrupt's suit to recover on the bond given upon the appointment of the receiver. Shortly thereafter the bankrupt's property was sold under a chattel mortgage. *Held,* that both the alleged bankrupt and his attorney were estopped from questioning the right of the petitioning creditor to offset as against his liability on the bond the amount of the judgment, on the ground that such attorney, who secured the order restraining execution, had a lien on the recovery against the petitioning creditor, which would exceed the amount thereof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 150.]

In Bankruptcy. In the matter of Morris Weissbord, an alleged bankrupt. On exceptions to the report of the special master, to whom was referred the fixing and allowance of the costs, counsel fees, expenses, and damages occasioned through the seizure of the alleged

---

bankrupt's property by a receiver. Master's report modified and confirmed.

Selick J. Mindes, of Newark, N. J. (Harold Remington, of New York City, of counsel), for alleged bankrupt.

William Greenfield, of Newark, N. J., for petitioning creditors and sureties.

HAIGHT, District Judge. The questions to be decided in this case will appear as they are discussed. Upon the filing of an involuntary petition against the alleged bankrupt (hereinafter referred to as the "respondent"), an application was made by all of the petitioning creditors for the appointment of a receiver, pursuant to section 2, cl. 3, of the Bankruptcy Act. A receiver was accordingly appointed and a bond filed, as required by section 3e. Thereafter, upon the application of the respondent, the amount of the bond, so required to be given, was increased. An additional bond was then filed, but only two of the petitioning creditors became parties thereto. The surety on each bond was the same. Upon a trial by a jury, it was found that the respondent was not insolvent at the time of the commission of the alleged act of bankruptcy, and the petition for adjudication was accordingly dismissed. Thereupon the alleged bankrupt petitioned the court to fix and allow the costs, counsel fees, expenses, and damages occasioned through the seizure and detention of his property by the receiver. That phase of the matter was then referred to a special master, and it is now before the court on exceptions to his report.

1. I cannot find that serious objection is made to the amount of damages, strictly speaking, which the special master has found that the bankrupt sustained by reason of the seizure of his property; nor, for that matter, to the amounts which he has recommended should be allowed as counsel fees for the services which he found an allowance could be made for in this proceeding. I have, however, gone over the testimony, and quite agree with his conclusions and recommendations as to such amounts.

[1] 2. It is primarily contended, on behalf of the petitioning creditors and the surety on the bonds (who will hereinafter be referred to as the "petitioners"), that the court is without jurisdiction to assess damages, etc., because the petition for adjudication has been dismissed. This rather startling proposition is advanced, notwithstanding the express provision of the statute that, if such petition be dismissed, the respondent shall be allowed all damages, etc., occasioned by the seizure of his property, and that they "shall be fixed and allowed by the court." Bankruptcy Act, § 3e. It needs, I think, no more than a passing consideration to demonstrate its utter unsoundness. The process of reasoning by which counsel seeks to sustain it is that an act of bankruptcy was necessary to vest this court with jurisdiction, and, as it was found that the respondent had not committed an act of bankruptcy, the court was without jurisdiction from the beginning, and hence, under the rule of Citizens' Bank v. Cannon, 164 U. S. 319, 17 Sup. Ct. 89, 41 L. Ed. 451, is now without power to even impose costs. Of course, this argument fails to take into account that the court originally had jurisdiction over the respondent

and the petitioners to determine whether an act of bankruptcy had been committed, and, pending a determination of that question, to appoint a receiver. Hence at all times it had jurisdiction over the parties and the subject-matter. The petition for adjudication having been dismissed, it also has jurisdiction, and is directed, by the express provision of the statute, to fix and allow the counsel fees, costs, and damages occasioned by the seizure of the respondent's property. The petition was not dismissed, because the court never had jurisdiction to hear and determine whether the respondent had committed an act of bankruptcy, or to appoint a receiver in the interim, but because, after it was found that an act of bankruptcy had not been committed, it was without jurisdiction to wind up the respondent's affairs and distribute his assets among his creditors. This conclusion is in harmony with the decision of the Appellate Court of Illinois, in T. E. Hill Co. v. Contractor's Supply & Equipment Co., 156 Ill. App. 270, 24 Am. Bankr. Rep. 84, and, in addition to cases therein cited, with the decisions of the Circuit Court of Appeals of the Second Circuit, in Altonwood Park Co. v. Gwynne, 160 Fed. 448, 87 C. C. A. 409, and In re Wentworth Lunch Co., 191 Fed. 821, 112 C. C. A. 335. See, also, In re Hill Co., 159 Fed. 73, 86 C. C. A. 263 (C. C. A. 7th Cir.). The decision of the District Court for the Eastern District of Arkansas in Re Williams, 120 Fed. 34, is not opposed to this view, because, as was there pointed out, there had been no seizure of the respondent's property, a fact necessary to make the provisions of section 3e applicable.

[2] 3. The amount allowed by the special master for damages, costs, expenses, and counsel fees exceeds the aggregate of the penal sums of the two bonds given by the petitioners, although he reports that such excess be not allowed the respondent. The next question, therefore, is whether, in this proceeding, more can be allowed than the aggregate of the bonds which the petitioners executed. The answer depends upon the construction to be given to section 3e, because this proceeding is entirely dependent upon its provisions. New rights and liabilities were created by it. In re Ward, 203 Fed. 769 (D. C. N. J.); Hill Co. v. Supply Co., supra. It is conceivably susceptible of one of two constructions, either that which will limit the extent of the liability to the penal sum of the bond required to be given, or one which will authorize the recovery of all costs, etc., irrespective of whether they exceed the amount of the bond.

It will be noted that the section in question first provides that a bond *shall* be filed, the amount of which is to be fixed by the court, and that it shall be conditioned "for the payment, in case such petition is dismissed, to the respondent * * * of *all* costs, expenses, and damages occasioned by such seizure, taking, and detention of the property of the alleged bankrupt." In the next paragraph, it provides, in the event of the dismissal of the petition, for the allowance to the alleged bankrupt of "*all* costs, counsel fees, expenses, and damages occasioned by such seizure, taking, and detention" of his property, and that they shall be fixed and allowed by the court, "*and paid by the obligors in such bond.*" It will thus be observed that, while it literally provides for the payment to the respondent of *all* damages,

etc., it at the same time directs that they shall be paid by the *obligors* in the bond. A surety is one of the obligors; but he, undoubtedly, cannot be held for more than the penal sum of the bond. That is the extent of his undertaking, and any construction which would enlarge it, in the absence of unequivocal language in the act to the contrary, would be unjustifiable. Therefore, if 'in any case the costs, etc., exceed the amount of the bond, *all* of the obligors are not liable for all of the costs, etc., for some are liable only for such part thereof as does not exceed the penal sum of the bond. Hence it is clear that a literal construction is not the proper one.

The question then is whether it can be construed as imposing a greater liability upon those on whose application the seizure was made than on the sureties. The only reported decision, to which my attention has been directed, which deals with this question at all, is that of the Circuit Court of Appeals of the Second Circuit, in Re Spalding, 150 Fed. 120, 80 C. C. A. 74. The order appealed from in that case was affirmed on the opinion of Judge Holt. He entertained the view that the only liability created by the section in question is under the bond, and that it does not create a liability on the part of those applying for the receiver, irrespective of the bond. Although the exact point at issue in that case was whether a person, to whom the bond, in terms, did not run, was entitled to any costs, etc., nevertheless, I do not think that, under the reasoning adopted, he could have reached the conclusion which he did, except by expressly holding that the section in question created no liability independent of the bond. Hence the remarks of Judge Holt were not strictly dicta, as counsel for respondent contends. It will be noticed that, in reaching this conclusion, he laid stress on the fact that the act provides that the costs, etc., shall be paid by the *obligors in the bond,* and took the view that the second paragraph is based on the asumption that a bond will be ordered large enough to cover all costs, etc.

What, at first glance, might appear, in the opinion of the Illinois Supreme Court, in Hill Co. v. U. S. F. & G. Co., 265 Ill. 534, 107 N. E. 194, 33 Am. Bankr. Rep. 781, 786, to be a dictum to the contrary, is really not such. In that case, the court said that independent of the bond, the applicant for the receiver could be compelled to pay *"the costs and expenses of the receivership."* Damages and counsel fees were not mentioned. It is well settled that a court of bankruptcy has authority under its general equity powers, and independent of the statute, upon the dismissal of the petition, to order the person, upon whose application a receiver has been appointed, to pay the costs and expenses of the receivership. In re Lacov, 142 Fed. 960, 74 C. C. A. 130 (C. C. A. 2d Cir.); In re T. E. Hill Co., 159 Fed. 73, 78, 86 C. C. A. 263 (C. C. A. 7th Cir.); In re Aschenbach Co., 183 Fed. 305, 105 C. C. A. 517 (C. C. A. 2d Cir.). Hence the above-quoted remarks of the Illinois court, presumably, had no reference to a liability based on section 3e. In view of the express provision that the damages are to be paid by "the obligors in the bond," among whom are the sureties, who are not, as before pointed out, liable for more than the penal sum of the bond, and in the light of other considerations to be hereinafter mentioned, it is reasonable to presume that Congress in-

tended that creditors, who instituted bankruptcy proceedings in good .faith and sought to preserve the alleged bankrupt's assets pending a hearing on the petition for adjudication, should know in advance the extent of their liability, in the event that the petition should be dismissed, and hence would be in a position to determine, before any damage was done, whether or not to go on with the proceeding to seize the alleged bankrupt's property.

If creditors, acting in entire good faith, faced the possibility that, if they were unsuccessful in their efforts to have a person adjudged a bankrupt, they would be liable to answer for all damages, etc., which might be occasioned to the alleged bankrupt by the seizure of his property, irrespective of the amount of the bond which they were required to give, they might well hesitate to take proceedings to preserve his assets, and thus, in many cases, would the purposes of the act be defeated. On the other hand, even in cases started in good faith, the alleged bankrupt is amply protected, because Congress has left it to the courts to fix the amount of the bond to be given, and thus the extent of the damages, etc., which the creditors will be required to pay. If, in any case, the bond which was initially given, appears insufficient, the alleged bankrupt has the right to apply to the court to increase it; also, if in any given case a proceeding of that kind should be instituted, not in good faith, but maliciously and without probable cause, the principles of the common law would undoubtedly afford the injured person a remedy. It is thus apparent, I think, that the construction apparently adopted by Judge Holt and the Circuit Court of Appeals of the Second Circuit is a more reasonable one than that which would make these creditors liable for all damages, etc., irrespective of the amount of the bond, and without regard to whether the proceedings were instituted in good faith or maliciously.

[3] 4. The above conclusion probably makes it unnecessary to consider whether or not the special master erred, as contended by respondent, in failing to allow, as part of the money to be paid by the petitioners, the expenses incurred by the respondent in procuring the dismissal of the petition for adjudication, as well as a counsel fee to his attorney for services in that connection. At any rate, I consider the contention without merit. The theory upon which it is urged that such expenses and counsel fees should be allowed, is that it was necessary to defeat the main suit, in order to release the property from seizure, because an effort to have had the receivership dissolved, under the circumstances of this case, would have been useless, as it would have required a determination of solvency or insolvency, which could not properly be determined in advance of a final hearing. Of course, this argument proceeds on the unwarranted assumption that, under no circumstances, would the court have dissolved the receivership in advance of a dismissal of the petition for adjudication. No effort was made to ascertain whether or not it would have done so. The authorities are uniform to the effect that the only damages, costs, expenses, and counsel fees, which can be allowed under section 3e, are those occasioned by the seizure of the respondent's property, and, as said by Judge Rellstab, speaking for this court in Re Ward, supra, 203 Fed. 773, that section "cannot be invoked to recover costs and ex-

penses occasioned in making a successful defense to the charge of bankruptcy." In re Smith (D. C.) 16 Am. Bankr. Rep. 478; Selkregg v. Hamilton Bros. (D. C. W. D. Pa.) 144 Fed. 557; In re Moehs & Rechnitzer (D. C. S. D. N. Y.), 174 Fed. 165; Hoffschlaeger Co. v. Young Nap (D. C. Hawaii), 12 Am. Bankr. Rep. 526; In re J. Ito Ter-usaki (D. C. W. D. Wash.) 238 Fed. 934. Hence, if the respondent saw fit to procure the release of his property from the seizure by seeking a dismissal of the petition for adjudication, rather than by an independent proceeding, he cannot be compensated for the expenses and counsel fees which he thus incurred.

[4, 5] 5. The special master has allowed the respondent counsel fees on this proceeding. They cannot properly be allowed, except by virtue of section 3e. In re Ward, supra, 203 Fed. 775. The necessity for the services upon which they were based was certainly occasioned by the seizure, and they would not have been rendered except for it. I think, therefore, that they are clearly allowable. The costs on this proceeding stand on a different footing. They were not occasioned by the seizure, in the sense that the bankrupt was required to bear or pay them, as he was required to employ counsel to institute and prosecute his claim for damages. They occupy the same position as costs recoverable in a suit at law on the bonds. They are chargeable against the petitioners, not by virtue of section 3e, but under section 2, cl. 18, of the Bankruptcy Act, General Order 34 (89 Fed. xiii, 32 C. C. A. xxxiii), and rule 16 of this court, because the petitioners have been defeated in this proceeding.

[6] 6. Subsequent to the dismissal of the petition for adjudication and the institution of these proceedings, one of the petitioning creditors recovered a judgment against the bankrupt, based on a claim which antedated the bankruptcy proceedings. It is now sought on behalf of the petitioners to offset this judgment against any sum which may be assessed against them in these proceedings. The only objection, advanced by the respondent, to permitting this to be done, is that the attorney for the respondent has an equitable assignment of or lien upon the moneys to be recovered in these proceedings, for the value of the services rendered and disbursements made by him on behalf of the respondent, in connection with the main bankruptcy proceedings, as well as those to assess damages, etc., which exceeds the amount to be allowed the respondent. Without pausing to examine either the correctness of the proposition, or the theory upon which it is based, I think that under the facts of this case the respondent's attorney is estopped to assert any assignment or lien which he may have. While these proceedings were pending before the special master, the petitioning creditor who secured the judgment, upon the application of the respondent, acting through the same attorney who now asserts the assignment or lien, was restrained from selling any of the respondent's property under an execution issued on the judgment, until the coming in of the special master's report herein and the ascertainment of the damages, etc., to which the respondent would be entitled. This was done because it reasonably appeared that the respondent would, in these proceedings, recover against the petitioning creditor, who held the judgment, a sum equal to or in excess of the amount of the judgment, and the latter

would thus be amply secured by being permitted to offset his judgment against the damages, etc., which might be awarded to the respondent against him; whereas, if he had been permitted to proceed under the execution, he would have, unquestionably, financially ruined the respondent, who was already suffering severely from the effects of the bankruptcy proceedings and the seizure of his property.

It now appears that, at the very time the respondent's attorney was applying for the above-mentioned restraining order, he held the assignment upon which he now bases, in part, at least, his present claim to a superior equity to that of the judgment creditor. Under these circumstances, to permit the respondent or his attorney to now deny the right of the petitioning creditors to use the judgment as an offset would be most inequitable and contrary to good conscience. True, the restraining order before mentioned was subsequently, on the motion of the respondent's attorney, dissolved, and it is urged that by reason thereof no harm resulted to the judgment creditor from the original restraint. I do not feel, however, in view of the fact that, shortly after the restraining order was dissolved, the bankrupt's personal property was disposed of at a sale under a foreclosure of a chattel mortgage, and the other circumstances of the case, that I am free to speculate as to whether any harm came to the petitioning creditor from the original restraining order. After proceedings on the execution were stayed, he had every right to assume that he would be permitted to offset the judgment against any damages which might be assessed against him and the other petitioners, and that therefore it was not necessary for him to attempt to protect his judgment at the time of the sale under the foreclosure proceedings. It seems to me that the respondent and his attorney, having taken the position which they did in procuring the original restraining order, must abide by it.

7. These conclusions lead to the confirmation of the special master's report in all respects, except that part which finds that the attorney for the respondent has a lien upon the moneys to be awarded to the respondent in these proceedings. As before stated, I have not found it necessary to consider that specific question. A decree will be entered, fixing and allowing as the costs, counsel fees, expenses, and damages, occasioned to the respondent by the seizure of his property, the sum of $1,000 (the aggregate of the two bonds), less the sum of $502.24, the amount of the judgment recovered by one of the petitioning creditors. All of the obligors on the bonds are jointly and severally liable for the balance, except the Donner Denholtz Company, which is liable only to the extent of the bond executed by it; that is to say, $250. The costs of this proceeding, including special master's fees, being, as before stated, no part of the costs occasioned by the seizure, must be paid by the petitioners, in addition to the sum before mentioned.