# FIDELITY AND DEPOSIT COMPANY *v.* L. BUCKI & SON LUMBER COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 220. Argued March 20, 1903.—Decided April 6, 1903.

Where it has been declared by the highest court of a State that liability for counsel fees is a part of the obligation assumed by the obligor in an attachment bond, such liability should be enforced in every court in which an action on such bond is brought. Where a liability can be enforced in the state court in which an action is originally brought that liability cannot be taken away by removing the case to a Federal court.

Where as the result of an attachment against a lumber company there was an interruption of business for a certain time, and the plaintiff in the action thereafter refused to deliver materials to the lumber company, the sureties on the attachment bond are liable for the damages directly attributable to attachment, but not for any of the damages caused by the plaintiff's failure to deliver materials or for the reflection on the credit of the lumber company by the bringing of the action in which the attached bond was given.

A postponement or continuance is largely within the discretion of the court, and unless such discretion is shown to have been abused there is no ground for reversal in a refusal to postpone.

On October 1, 1897, the Atlantic Lumber Company commenced two actions at law in the Circuit Court of Duval County, Florida, against The L. Bucki & Son Lumber Company. In each of these actions a writ of attachment was issued, The Fidelity and Deposit Company of Maryland being the surety on the attachment bonds. Both of the attachments were dissolved. Soon after such dissolution the Bucki Company brought the present action against The Fidelity Company upon the attachment bonds. The action was commenced in the Circuit Court of Duval County, Florida, but subsequently removed to the United States Circuit Court for the Southern District of Florida. On a trial in that court the Bucki Company obtained a judgment which by the Court of Appeals of the Fifth Circuit was modified, and as modified affirmed. 109

Fed. Rep. 393 ; 48 C. C. A. 436. Subsequently thereto each of the parties obtained a writ of certiorari from this court. 184 U. S. 698.

*Mr. Richard H. Liggett* for The Fidelity and Deposit Company. *Mr. Winfield Liggett* was with him on the brief.

*Mr. H. Bisbee* for The L. Bucki & Son Lumber Company. *Mr. George C. Bedell* was with him on the brief.

Mr. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The principal question arises in the claim to recover counsel fees incurred in securing the dissolution of the attachments. The reasonable value of such fees was specially found by the jury to have been $7500. The Circuit Court refused to include this in its judgment, but the Court of Appeals ruled otherwise, and ordered judgment for that sum in addition to the amount of the general verdict.

By the law of Florida counsel fees incurred in securing the dissolution of an attachment are recoverable in actions upon attachment bonds. This was distinctly ruled in *Gonzales* v. *De Funiak Havana Tobacco Company*, 41 Florida, 471, in which the second headnote recites that " attorney's fees and other expenses incurred in relation to the attachment, or in procuring its dissolution, are properly allowed as elements of damage in actions upon attachment bonds." And this is conclusive, for by McClellan's Dig. 345, sec. 21, it is provided that " the judges of the Supreme Court of this State shall, in deciding cases, prepare and make a syllabus or statement of the points and principles intended to be decided by the court, which shall be published in the reports in lieu of that usually prepared by the reporter." *Hart, Ex., et al.* v. *Stribling et ux.*, 25 Florida, 435. It is true, as contended by counsel, that the case in 41 Florida was not decided until after the bonds sued on in this case had been executed, but the decision declares the law of the State, and that, in the absence of statutes affecting the ques-

tion, must be taken to have been always the law. And in its opinion the court refers as authority, among other cases, to *Wittich* v. *O'Neal*, 22 Florida, 592, 599, (decided in 1886,) in which it was held that "in a suit on the bond given to obtain a temporary injunction, counsel fees incurred by the defendant in the suit to dissolve such injunction are damages that may be recovered if covered by language of the bond." In the opinion in that case the court, while conceding that other appellate courts had ruled differently, (among them this court in *Oelrichs* v. *Spain*, 15 Wall. 211,) declined to follow such ruling, and said:

"It seems just and right that where a party asks the interposition of the power of the courts, in advance of a trial of the merits of the cause, to deprive the defendant of some right or privilege claimed by him, even though temporarily, that if on investigation it is found that the plaintiff had no just right either in the law or the facts to justify him in asking and obtaining from the court such a harsh and drastic exercise of its authority, he should indemnify the defendant in the language of his bond for 'all damages he might sustain,' and that *reasonable* counsel fees necessary to the recovering of such injunction are properly a part of his damage."

The promise in the bonds sued on here is like that referred to in the language just quoted, and was "to pay all costs and damages which the said L. Bucki Lumber Company may sustain in consequence of it, the said Atlantic Company's improperly suing out said attachment." Liability for these counsel fees being, as declared by its highest court, a part of the obligation assumed by the obligor in an attachment bond given in the courts of Florida, should be enforced in every court in which an action on such a bond is brought. This action was commenced in a Circuit Court of the State, and if it had proceeded there to judgment unquestionably a liability for counsel fees would have been sustained, and it cannot be that by removing the case to the Federal court such liability has been taken away. In *Tullock* v. *Mulvane*, 184 U. S. 497, 505, we held that when a bond had been given in a case pending in the Federal court and an action was thereafter brought in the state court on such

bond, the rule of liability was that existing in the Federal court in which the bond was given, and said :

"It is clear that if it be true that the bond given in a Federal court of equity on the granting of an injunction is not to be construed with reference to the rules of law applicable to such bonds in such court, then there can be no certain general rule by which to determine the liability of the obligors upon the bond. Their responsibility would be one thing in a court of the United States and a different thing in the courts of the various States, which would imply that the parties did not contract with reference to any definite rule of liability." See also *Missouri, Kansas &c. Railway Company* v. *Elliott*, 184 U. S. 530.

In reference to the other alleged errors, the Court of Appeals, without referring to them in particular, said, " on the fullest consideration of the whole case we conclude that the record presents no error on the part of the trial judge for which the judgment should be reversed."

We do not wonder at this observation of the Court of Appeals, as we find from the record that the plaintiff filed in that court thirty-seven assignments of error covering seventeen printed pages, and the defendant thirty-nine such assignments. It may be true, as the Scriptures have it, that " in the multitude of counsellors there is safety," but it is also true that in a multitude of assignments of error there is danger.

Perhaps it is well to first briefly outline the case and the testimony. Prior to October, 1897, the Atlantic Company had under contract been engaged in furnishing the Bucki Company with logs with which to operate its sawmills, at the rate of 2,000,000 feet per month. It canceled its contract on account of an alleged breach of the Bucki Company and brought the two actions at law, one for $200,000 damages, resulting from such breach, and the other for $9980.80, claimed to be due for logs delivered, and in these actions sued out the two attachments. They were levied upon the mill plant, the logs, lumber, and all other personal property of the Bucki Company. While the personal property was taken into possession by the sheriff, the mill was a fixture, a part of the realty, and the writs did

not operate to dispossess the Bucki Company therefrom, but simply established a lien upon it.   By forthcoming bonds the personal property was, after a few days, released, and subsequently the attachments were dissolved.   On the trial the plaintiff was permitted to show the extent of its mill plant, the amount of business it had been doing in prior years, the net profits of such business during the nine or ten months preceding the levy of the attachments, the orders and contracts which it had on hand for timber and lumber, an alleged increase in the price of timber in the year succeeding the levy ; there was testimony bearing upon the question of its ability to get logs elsewhere, the means of transporting them to its plant, and the existence of negotations for a loan of money secured by the material it then had on hand.   There was evidence also tending to show the financial condition of the company, its default in certain payments and efforts it made to utilize its property subsequently to the attachments.   After all the testimony had been presented the defendant made a motion in writing to exclude a number of items thereof from the consideration of the jury, upon which motion the court ruled as follows:

" This cause coming on to be heard on a motion of the defendant's attorney to exclude certain testimony from the jury, and it being considered that under the testimony introduced, any damages arising from the consideration of injury to credit or loss of profits would be too remote, uncertain and speculative, it is therefore ordered that this motion be granted as to the testimony relating to the cost of manufacturing lumber and the supply of timber lands ; all testimony to the damage to credit, loss of profits and all evidence relative to the market prices of lumber subsequent to the attachment.   That in regard to the profits plaintiff's mill had been making prior to October 1, 1897, be retained and considered only for the purpose of determining the actual damages suffered during the time the operation of the mill was suspended on account of the attachment and the motion be denied in all other respects."

And in making this ruling it said :

" This order is made at this time only for the purpose of confining the argument to the jury upon these lines.   I am fully

satisfied in my own mind that damages from the loss of profits arising from the subsequent or future business which might possibly have been carried on is under the evidence too remote and speculative for the testimony to go to the jury. Some courts have held that every fact should go to the jury to be considered, but the United States courts have uniformly held that where the testimony is such that any reasonable man, or any reasonable court could view it in but one light, the court may exclude it from the jury. In this matter I have admitted the testimony, but I fail to find that there is such evidence of damage from loss of future profits as should go to the jury. If there was no combination of circumstances other than the attachment; had a third party come in and levied an attachment and stopped the business, and there had been no suspension save by the attachment, then there might have been such testimony as would prove a loss of profits; but in this case the particular circumstances, the suspension of the contract for the delivery of logs and the bringing of the two common law suits, so changed the circumstances that there is no certainty that there could have been any profit.

"Every author of authority referred to, even by the plaintiff's attorney, says there must be some certainty.

"Now the certainty of profits here depends upon this: It is claimed that on account of these attachments the plaintiff's credit was injured; that had it not been for the attachments, money could have been borrowed, timber land or stumpage could have been procured, logs could have been procured prof- itably; if logs could have been procured profitably, lumber could have been manufactured and marketed profitably. Now, be- tween the borrowing of the money and the marketing of the lumber there are so many uncertainties that the court cannot say that there is sufficient to justify the jury in finding perhaps large damages against the defendant in this case on account of loss of credit and profit—from the levying of the attachments."

The plaintiff excepted on the ground of an invasion of the province of the jury, and because it was, as it alleged, misled by the rulings of the court in admitting such testimony, and therefore failed to introduce other testimony which it claimed

to possess and which upon another theory would have tended to show the damages it had sustained. Because it was so misled it also filed a motion to discharge the jury and postpone the trial of the case, which motion was denied and the case submitted to the jury. Many instructions were asked by counsel on both sides looking to the question of damages and exceptions were taken to the refusal of the court to give those instructions. In its general charge the court said:

"The only question is a clear-cut question; it is how much damages did the Bucki Company suffer. This question becomes more difficult by reason of facts and circumstances attending the writs of attachment. At the time the writs of attachment were levied there were two common law suits commenced, both of which have been terminated. That is one attending circumstance. The other is that the Atlantic Lumber Company cancelled its contract or considered it cancelled. That is, the Atlantic Company refused and ceased to deliver any more logs to the Bucki Company. So that the three combining circumstances, the levy of the writs of attachment, the ceasing to furnish logs and the common law suits unite in being the cause for subsequent suffering of damage by the Bucki Company.

*        *        *        *        *        *        *        *

"But in this case the attachment did not cause the stoppage of the furnishing of logs, nor did the issuing of the attachment cause the institution of the common law suits.

*        *        *        *        *        *        *        *

"I have therefore, as you have seen in the course of the case, granted a motion to exclude from your consideration all testimony as to damages for loss of credit and all testimony as to all profits the Bucki Company might have made in the future in procuring capital, in procuring lands, in procuring logging plants and procuring logs, at a profit, and so manufacturing lumber therefrom at a profit.

*        *        *        *        *        *        *        *

"I therefore instruct you gentlemen that the damage must be confined to the damages suffered by the detention of the mill for the time being; those damages that have arisen by the

detention of and taking the mill properties from the possession of the plaintiff."

Without further quotations, enough appears to show the general scope of the rulings of the court in reference to the measure of damages, and even conceding that its action, as said by the Court of Appeals, "is, in several particulars, subject to the criticism which is levelled at it by some of the other numerous assignments of error," we are of opinion that there was no such substantial error as justifies a reversal of the judgment. That there may be such certainty of profits as in some actions for breach of contract will justify their recovery is undoubtedly true. *Howard* v. *Stillwell & Bierce Manufacturing Company,* 139 U. S. 199, 206; *Cincinnati Gas Company* v. *Western Siemens Company,* 152 U. S. 200; *Anvil Mining Company* v. *Humble,* 153 U. S. 540, 549. If this action had been one by the Bucki Company against the Atlantic Company to recover damages for a breach of its contract to deliver logs, the inquiry as to profits might have been broader than was permitted in the present case. But, as pointed out in the charge of the court, the failure of the Atlantic Company to further deliver logs was not caused by or the direct result of the attachments. By signing these bonds the surety did not agree to become responsible for all the damages which the Bucki Company might sustain by every act of the Atlantic Company, but simply that it would be responsible for the damages resulting directly from the attachments. The direct result of the attachments was the placing of a lien upon the realty, and for a certain time interrupting the Bucki Company's business by taking possession of its personal property, and the damages which resulted directly from these alone were the damages which the surety company agreed to become responsible for. The court very properly admitted in evidence, and permitted the jury to consider the net profits which had been earned from the carrying on of the business in the few months prior, not as in and of itself constituting the measure of damages, but as tending to show what damages the Bucki Company sustained by the brief interruption of its business. When the lien on the realty was ended and the personal property restored, the atttachments

had spent their force and the surety company became responsible for all the damages attributable directly to the attachments. The failure to further deliver logs, and the reflection on the credit of the Bucki Company by the bringing of the actions may also have damaged or added to the damages of the Bucki Company, but such result was not due to the attachments. The Atlantic Company and not the surety company was the party responsible therefor.

Neither can we see that there was error in refusing to discharge the jury and postpone the trial. A postponement or continuance is largely within the discretion of the trial court, and unless that discretion is shown to have been abused there is no sufficient ground for reversal. It does not appear that any witness had been discharged or any books or documents in possession of the counsel sent away during the trial, and there was no offer then and there to present further testimony. It does not seem to us that the Bucki Company was prejudiced by the ruling of the court in this respect.

The liability for counsel fees and the true measure of damages are the main questions in the case. This latter question was presented in different forms and with various limitations, but we think the rulings of the trial court thereon were substantially correct. We see no error in the record which justifies a reversal of the judgment, and it is

*Affirmed.*