MANTLE LAMP CO. OF AMERICA v. ALADDIN MFG. CO.

ALADDIN MFG. CO. v. MANTLE LAMP CO. OF AMERICA.

Nos. 5422, 5443.

Circuit Court of Appeals, Seventh Circuit. June 29, 1935.

Rehearing Denied Aug. 7, 1935.

George I. Haight and W. H. F. Millar, both of Chicago, Ill., for appellant.

Maurice S. Cayne, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZHENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

These cross-appeals are from a decree in a suit brought by Aladdin Manufacturing Company to enjoin the Mantle Lamp Company of America from using the word "Aladdin" upon portable electric lamps. The Mantle Lamp Company of America filed a counterclaim asking that Aladdin Manufacturing Company be enjoined from using the word "Aladdin" on lamps or any goods which the Mantle Lamp Company now sells under that name. The District Court held that the Aladdin Manufacturing Company was entitled to use the word "Aladdin" on electric portable lamps; that the Mantle Lamp Company was entitled to use the word "Aladdin" on kerosene mantle lamps, but not on electric portable lamps; that neither side was entitled to an accounting; and that each side pay its own costs. From this decree both sides appealed, but for convenience in this opinion the Mantle Lamp Company will be referred to as appellant and Aladdin Manufacturing Company as appellee.

In 1908 the Mantle Lamp Company of America, an Illinois corporation, began the sale of kerosene mantle lamps and accessories therefor under the trade-mark "Aladdin." In 1920 the Aladdin Manufacturing Company, an Indiana corporation, commenced to manufacture and sell portable electric lamps under the name "Aladdin." Appellant alleges that the name was selected in order that appellee might avail itself of the advertising, good reputation, etc., of appellant. Appellee falsely used the words "Trade Mark registered in the United States Patent Office" in its advertising matter and upon its electric lamps, and, while it offered as an excuse its ignorance of the law governing the proper use of these words, the record shows that it failed to remove them when the mistake was called to its attention. It marked its lamps in large type "Aladdin Lamps" and in type so small as often to be illegible added the words "Electric Portable," thereby causing its goods to be mistaken for those of appellant. Tags were attached to the lamps bearing the words "Tune in Station WLBC every Tuesday night and listen to our Aladdin programs." Appellee claims that, at the time these tags were placed upon the lamps and distributed, it had arrangements pending for such a broadcast, but its plans never materialized. Appellant contends that, years after the arrangements for a broadcast had failed, appellee was still selling lamps with these tags in distant states that could never, under any circumstances, have tuned in on the program because of distance from the small station WLBC which could, under the most favorable conditions, be heard for only thirty miles, and that the purpose of appellee was to take advantage of the programs being broadcast by appellant over one of the large national chains.

Appellant sought to prove that appellee's salesmen had deliberately and falsely represented themselves as selling for the original "Aladdin" company, as being from the electric department of appellant's company, whereas appellant's salesmen represented only the kerosene mantle lamp department, etc. Appellee contends that these alleged acts of unfair competition, though proved, cannot be connected with appellee, but must be attributed to excessive zeal on the part of its salesmen, unauthorized and unsanctioned by appellee. The trial court made no findings of fact on the question of unfair competition upon the part of either company.

In 1931 appellant began to manufacture portable electric lamps and use the word "Aladdin" upon them as it had upon its

kerosene mantle lamps since 1908. Two years prior to that time, in 1929, a dispute had arisen between appellee and appellant's subsidiary in Australia; the latter having demanded that appellee cease to sell its electric lamps in Australia under the name "Aladdin."

In 1931 appellant filed its opposition to the registration by appellee in the United States Patent Office of the trade-mark "Aladdin" for electric lamps. In all of these proceedings, appellant was successful. However, on this appeal, it is contended by Aladdin Company, appellee, that the Mantle Lamp Company, appellant, sat by while appellee built up its large business and that by appellant's conduct encouraged appellee in the belief that its business would be unmolested and appellant is now barred from the relief which it seeks by its cross-claim because of laches in asserting its rights. The trial court held that appellant's conduct amounted to acquiescence in the use by appellee of the word "Aladdin" on portable electric lamps and that it would be inequitable now to restrain appellee from such use.

The District Court found: "A kerosene mantle lamp is a mechanical device, while a portable electric lamp is an ornamental stand for supporting a light bulb. The two lamps are sold to different classes of trade, and neither in actual commercial practice is capable of supplanting the other in its field." The term "lamp" is a general one describing any of a number of instruments, vessels, or devices for the furnishing of artificial light. When appellant first began to manufacture its lamps in 1908, electric lights were not common in small towns and villages and their use in country homes was negligible. Appellant manufactured and sold what appears from the record before us to have been a very satisfactory lamp. Its sales in the United States and Canada from 1913 to 1933 amounted to something over $24,000,000. In the United States alone it has spent $2,500,000 on advertising. The word "Aladdin" came to indicate in the mind of purchasers that the product originated with the Mantle Lamp Company of America.

During the period since appellant began to manufacture and sell its lamps, electric power has been extended to towns, villages, and farms all over the United States. Granting that a kerosene mantle lamp could not compete with an electric lamp where that means of supplying artificial light was open to the purchaser, can we say that the public was not, and is not, deceived by appellee when it marks its lamps "Aladdin Lamps" and "New Lamps by Aladdin"? Will not prospective purchasers be misled into thinking that the company whose reliable products they have known or used for so long is keeping step with the new developments in methods of artificial illumination and that the new electric lamps are the products of the Mantle Lamp Company of America with whom they have come to associate the name "Aladdin"?

In the case of Wall v. Rolls-Royce of America, 4 F.(2d) 333, 334, the Circuit Court of Appeals for the Third Circuit said: "It is true those companies made aumobiles and aeroplanes, and Wall sold radio tubes, and no one could think, when he bought a radio tube, he was buying an automobile or an aeroplane. But that is not the test and gist of this case. Electricity is one of the vital elements in automobile and aeroplane construction, and, having built up a trade-name and fame in two articles of which electrical appliances were all important factors, what would more naturally come to the mind of a man with a radio tube in his receiving set, on which was the name 'Rolls-Royce,' with nothing else to indicate its origin, than for him to suppose that the Rolls-Royce Company had extended its high grade of electric product to the new, electric-using radio art as well. And if this Rolls-Royce radio tube proved unsatisfactory, it would sow in his mind at once an undermining and distrust of the excellence of product which the words 'Rolls-Royce' had hitherto stood for."

See, also, Standard Oil Co. v. California Peach & Fig Growers (D. C.) 28 F.(2d) 283, 285, and authorities collected therein.

The function of a trade-mark is to point out distinctively the origin or ownership of the articles to which it is attached. The word "Aladdin" attached to a lamp manufactured by any company other than the Mantle Lamp Company of America, regardless of the method by which light is produced therein, must invariably deceive and confuse the buying public. The exhibits contained in the record before us furnish abundant proof of the confusion which has resulted in the past and furnish a proper basis for prophecy as to the future. Appellant was the first user of the trade-mark "Aladdin" on a lamp. Its use

was so extensive and its advertising so persistent that the word "Aladdin" on a lamp has come to be associated by the public with the Mantle Lamp Company of America, and it is the opinion of this court that it is entitled to the exclusive use of the term in connection with both kerosene mantle lamps and electric lamps.

"* * * Any honest man is entitled to have the good will of his business protected, by protecting the means whereby the public has come to distinguish and recognize the complainant's product." France Milling Co. v. Washburn-Crosby Co. (C. C. A.) 7 F.(2d) 304, 305. See, also, Cluett, Peabody & Co. v. Hartogensis (Cust. & Pat. App.) 41 F.(2d) 94; Cluett, Peabody & Co. v. Wright (Cust. & Pat. App.) 46 F. (2d) 711.

■ The trial court apparently placed weight upon the fact that the trade-marks registered by the defendant (appellant here) in the United States Patent Office were under class 34, "covering heating, lighting and ventilating apparatus, not including electrical apparatus." The court said: "The foregoing would indicate that defendant's trade-marks did not cover portable electric lamps, and that when the plaintiff began using the word 'Aladdin' on electric lamps, it invaded no field that had previously been occupied by the defendant."

With the conclusion which the trial court draws from the facts, we cannot agree. Persons desiring to register trade-marks are required to use the wording of the Patent Office classification under which registration is desired. As appellant has so well argued in its briefs, any presumption that might have arisen from the words of the Patent Office classification as being a limitation upon the scope of the trade-mark has been overcome by the action of the Patent Office in determining between these parties that the rights of the appellant in its trade-mark registration do extend beyond the words of the Patent Office classification and do include electric portable lamps. The Patent Office has decided, in litigation between the parties to this suit, that kerosene mantle lamps and electric lamps are goods possessing the same descriptive properties, and, while that decision is not controlling upon us here, it is entitled to great weight. Malone v. Hay, 56 App. D. C. 110, 10 F.(2d) 905, 906; Williams Oil-O-Matic Heating Corporation v. Butler Co. (Cust. & Pat. App.) 39 F.(2d) 693; American Fruit Growers v. Braadland, Ltd. (Cust. & Pat. App.) 45 F. (2d) 443.

■ We find nothing in this record which discloses such an acquiescence by appellant in the use of the trade-mark "Aladdin" on electric portable lamps as will bar it from asserting the rights for which it here contends. In 1929, when appellant's Australian subsidiary demanded that appellee cease to sell its electric lamps under the name of "Aladdin" in Australia, and again in opposing appellee in the Patent Office in 1931 and 1932, appellant was asserting its rights to the use of the word "Aladdin" not only on kerosene mantle lamps but on electric lamps as well. The most that can be claimed by appellee is that by appellant's delay in bringing suit it has lost its right to damages and that it is now entitled only to an injunction against the future use of its trade-mark on lamps. Menendez v. Holt, 128 U. S. 514, 9 S. Ct. 143, 32 L. Ed. 526; Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 362, 60 L. Ed. 713.

Appellee strongly relies upon the case of France Milling Co. v. Washburn-Crosby Co., supra. There are many distinguishing points between that case and the one here before us. In that case, appellant was the first user of the words "Gold Medal" on wheat flour. Later, appellee received a gold medal at the St. Louis Exposition for his pancake flour and commenced to sell it under the name "Gold Medal" with a picture of his medal on the package. He had a justifiable reason for adopting the name in the first place, and there was nothing in the record to indicate that he had done so in order to trade upon the reputation of appellant. Furthermore, appellant had delayed for ten years to assert an exclusive right in the words "Gold Medal," and had even sold its flour to appellee to be used in making up the pancake flour. Thus appellee in that case was misled by affirmative acts upon the part of appellant.

■ Coming now to the question as to whether appellee should be enjoined from the future use of the word "Aladdin" in its corporate name, it is our opinion that it should be so enjoined. The continued use of the trade-mark of appellant in the corporate name of appellee will inevitably confuse the buying public and place an instrument of deception in the hands of the unscrupulous or overzealous salesman. United States Ozone Co. v. United States Ozone Co. of America (C. C. A.) 62 F.(2d)

430

881, 887; De Nobili Cigar Co. v. Nobile Cigar Co. (C. C. A.) 56 F.(2d) 324, 329.

Only one reasonable conclusion may be drawn from the record here before us, viz., that appellee took the corporate name "Aladdin Manufacturing Company" with the deliberate intention of utilizing the advertising and the good will of appellant. By the use of such slogans as "New Lamps by Aladdin" and "Aladdin ties your advertising in with ours,", it suggested, if it did not authorize, its salesmen to deceive the public.

Appellant is entitled to an injunction restraining appellee from selling or offering for sale any lamps under the trademark "Aladdin" and from the use of the word "Aladdin" in its corpoiate name.

The decree of the District Court is reversed and the cause remanded for further proceedings in harmony with the views here expressed, at the cost of the Aladdin Manufacturing Company.