## ALADDIN MFG. CO. v. MANTLE LAMP CO. OF AMERICA.

### No. 7310.

Circuit Court of Appeals, Seventh Circuit.
Jan. 10, 1941.

W. H. F. Millar, of Waynesville, N. C., and Nicholas J. Madgey, of Chicago, Ill., for appellant.

Hood & Hahn, of Indianapolis, Ind., and G. B. Jones, of Chicago, Ill., for appellee.

Before EVANS and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

The Mantle Lamp Company of America, plaintiff, in a counterclaim charging appellee with trade-mark infringement and unfair competition, appeals from a decree of the District Court overruling the report of the master upon accounting and denying to appellant profits and damages, on the ground that no evidence of lost sales or of actual damages had been introduced and decreeing that appellee, defendant in the counterclaim, was not a wilful or flagrant infringer of appellant's trade-mark.

In the original suit appellee filed its complaint alleging infringement of the trade-mark "Aladdin" upon portable electric lamps. Appellant filed its counterclaim, alleging priority in the use of the word "Aladdin" on lamps or any other merchandise similar to that sold by it, and charging appellee with unfair competition. The District Court decreed that appellee was entitled to use the word "Aladdin" on electric portable lamps and that neither party was entitled to an accounting. Both parties appealed, and this court, in Mantle Lamp Company of America v. Aladdin Mfg. Co., 7 Cir., 78 F.2d 426, found that appellant was entitled to the exclusive use of the word "Aladdin" as to all goods manufactured by it, that appellee had infringed, was guilty of unfair competition and should be enjoined from using the word "Aladdin" in connection with its business of manufacturing and selling portable electric lamps and that the alleged estoppel arising from laches and acquiescence urged by appellee was not sustained.

From the decree entered by the District Court in pursuance of our mandate, another appeal was prosecuted, which resulted in our decision, in Aladdin Mfg. Co. v. Mantle Lamp Company of America, 7 Cir., 86 F.2d 141, that the decree should include an accounting for profits and damages, and that appellant should be allowed to offer any evidence which would justify the allowance of exemplary and compensatory damages and appellee to introduce any evidence which would tend to

establish laches, estoppel or other defense which might bar or mitigate recovery of damages. Following these adjudications, a reference to the master resulted in findings and conclusions recommending the recovery of profits and damages, which were disapproved by the court.

■ Appellant insists that inasmuch as this court has previously held that appellant was not guilty of laches, the renewal of assertion of such guilt defeats the prior adjudication. It points to the record in the earlier litigation as decisive of that question. On the original appeal the issue was fully briefed and argued in this court, and in the course of our opinion we said "we find nothing in this record which discloses such an acquiescence by appellant in the use of the trade-mark 'Aladdin' * * * as will bar it from asserting the rights for which it here contends." [78 F.2d 429.] Appellee filed a petition for rehearing and therein again urged laches and acquiescence. Rehearing was denied and appellee thereupon filed a petition for writ of certiorari in the United States Supreme Court, once more urging the same issue. Certiorari was denied. 296 U.S. 639, 56 S.Ct. 173, 80 L.Ed. 454. Thus is has been decided by us in at least two instances that there was no such estoppel by way of laches or acquiescence as would prevent appellant from securing an injunction against the continued infringement of its trade-mark. True, upon the second appeal, when we directed an accounting and provided that appellant might introduce evidence in support of its prayer for exemplary and compensatory damages, we also, obviously in an attempt to prevent any inequitable result, provided that appellee might offer any evidence that might mitigate or defeat the application for profits and damages. But at the hearing before the master, appellee offered no new or additional evidence in support of its insistence of estoppel by way of laches but relied solely upon the record previously presented upon which this court had previously held that no estoppel existed. Appellant insists, therefore, that it is too late for appellee to insist that the defense which it has asserted previously can upon the same evidence be renewed successfully and that the prior decision is res adjudicata upon this issue.

The decree previously entered was interlocutory in character. We assume, therefore, that all matters determined therein might under proper circumstances be relitigated until final decree. Undoubtedly courts possess discretion to permit renewal of applications to modify rulings made or orders entered in the course of litigation at any time before final disposition. Whether a second application shall be entertained depends entirely upon the circumstances of the cause. Courts have power to prevent vexatious and repeated pleadings upon the same point and exercise their discretion to preclude reagitation of the same question on the same state of facts. Consequently upon an application for re-examination, whether it be by way of motion for new trial, petition for rehearing or in other form, before the court will act affirmatively, some equitable ground for re-examination must be presented. And, ordinarily, where, no new evidence is offered or if new evidence is offered and lack of diligence in procuring it exists, the application will be denied. We find in the present record nothing that appeals to us as justifying re-examination of a question which, upon the same evidence, we have decided and an application for rehearing of which we have denied.

■ Under 15 U.S.C.A. Section 99 and Section 96, in an accounting for profits from infringement of a trade-mark, appellant was required to prove appellee's sales only and the latter was under obligation to prove all elements of costs which it claimed. Duro Co. v. Duro Co., 3 Cir., 56 F.2d 313 at page 315. Appellant proved gross sales from all sources of $4,126,025.52. From this there were admittedly proper deductions of $3,709,083.20, leaving a balance with which we are concerned of $416,942.32. The master allowed deductions therefrom as follows: salaries $106,000; cost accounting system $4,670; advertising $193,787.67; depreciation $45,027.95; Aladdin's Fellow advertising campaign $1,304.11; income tax $4,133.07, leaving a balance of profit of $62,019.52. In a supplemental report he deducted therefrom in addition, Durham royalties $3,150.41 and corrected an error of $2,243.03, leaving a balance of profit $56,626.08. The correctness of his methods is not disputed, but each party questions the propriety of certain of his items of debit and credit.

■ The Durham royalties arose from appellee's license to manufacture smoking trays. The master originally concluded that in view of appellee's advertising of "Aladdin smoking stands" and "Aladdin's

smoking trays," it had failed to meet the burden of showing that this item was not within profits for which it should account. In his supplemental report, however, after objection by the Aladdin Company and re-examination of certain portions of the record, he concluded that the objection should be sustained and the amount recommended in his original report be reduced by the amount of the royalties. Upon examination of the record, we agree with the master in this respect and sustain the deduction.

The Florentine royalties were received from the sale of "Scene in Action Lamps," in Canada, and appellee contended before the master that this item, amounting to $2,674.38, was non-infringing income. The master found that the radio advertising by appellant through the power stations utilized, covered both Canada and the United States; that the proper inferences to be drawn from appellee's advertising were that these lamps were sold under the name of "Aladdin" and that appellee could easily have established the fact in evidence, if to the contrary, had it chosen but that it had failed to do so. Inasmuch as the burden was upon appellee, the master recommended that no deduction from income be permitted therefor. The record supports him in this respect. The facts about the matter were entirely within the knowledge of appellee and it would have been a simple matter for it to have negatived the liability if such were possible. Having failed to do so, it must account for this element of profit.

The total of salaries paid to officers of the company was $167,564. The master eliminated therefrom all compensation paid George Spencer and his brother, William Spencer, aggregating $42,670. The master found that during the time they drew these salaries, each of them owned one-fourth of the common stock, the balance being held by Sachsteder; that the same proportionate ownership of stock persisted throughout the accounting period; that Sachsteder managed the corporation and made all decisions as to its activities; that the record disclosed no instance of either Spencer's sitting in any conference, giving any advice, making any decision or doing anything in connection with the company's affairs. He concluded, quite reasonably it seems to us, that the payment of money to these two stockholders was a distribution of profit. Of this, we approve.

As to Sachsteder, it was shown that salaries paid him aggregated $124,-494. He owned one-half of the stock. The master pointed out a parallel reduction in Sachsteder's salary from the time the Spencers failed to receive payments and concluded, therefore, that during the period when they did receive salaries, certain sums of money paid Sachsteder were distributions of profit and that, in deducting the salary paid to him, the sum of such distribution $18,894, should be eliminated as an expense. After eliminating this item, he found that the balance $105,600 should be deducted.

Appellant contends that the master should have allowed as a deduction no salary paid Sachsteder because he was the dominant force responsible for appellee's torts. But we are not dealing now with punitive damages but rather with actual profits. The amount deducted as salary was actually paid Sachsteder for the management and conduct of the business and in determining the actual profits for which appellee should account, we must credit all costs. Salaries paid to officers are proper deductions. Providence Rubber Co. v. Goodyear, 9 Wall. 788, 802, 803, 19 L.Ed. 566; Nashville Syrup Company v. Coca Cola Co., 6 Cir., 215 F. 527, 533, Ann.Cas.1915B 358; Stromberg Motor Devices Co. v. Zenith, Corp., 2 Cir., 73 F.2d 62, 65. We approve the master's deduction of salaries in the sum of $106,000.

The master allowed as a deductible expense an item of $4,670, spent in the installation of a cost system known as the Bedeaux system. He concluded from the evidence that the expenditure of this item was within the sound discretion of the management and should be allowed. In view of the fact that it was an actual expense and incurred in good faith, we approve.

Depreciation in the amount of $45,-027.95 was allowed as a deductible expense. During part of the accounting period, appellee charged off as depreciation moneys calculated at the rate of 2½ per cent and during the remainder of the period 5 per cent. The master found that the rate thus charged was not unusual and had been approved by the government and rightfully made allowance of the entire sum.

The master allowed two other deductions, for the Aladdin Fellow advertising campaign $1,304.11 and for income tax $4,133.07. Each of these is attacked,—the first upon the ground that the advertising constituted on appellee's part an attempt to capitalize wrongfully its infringing and unfair practices and the second on the ground that the tax, having been incurred by the company while it was engaged in such, wrongful practices, should not be credited to costs or charged to profits. But as we have pointed out, in determining gain, all cost incurred in building it up should be deducted. Profits are awarded appellant upon the ground that appellee, by its acts, has gained something which in fact belongs to appellant and which would have otherwise been earned by appellant. This allowance involves no element of damages but is an effort to make appellant whole in its profits. Even though the methods employed in realizing gain were not proper, yet they were a part of the costs of realization from sales from which the profits resulted. Awarding to appellant profits necessitates the deduction of the cost of realization thereof.

Advertising cost of $193,787.67 was allowed by the master as a business expense. He concluded that it was actually an expense going to the realization of profits and cutting them down and that in calculating gains and profits, he should deduct it. In the determination of gains and profits the action was correct.

In addition to profits, the master recommended the allowance of damages. He reviewed the history of the trade-mark registration controversy, in which at all times appellant succeeded. He discussed at length appellee's advertising, disclosing clearly deliberate infringement and unfair competition over a period years. He pointed out that appellee supplied its dealers with advertising matter, saying to them that the mats would "tie up the dealers' advertising" with appellee's in national magazines,—national advertising which was never an accomplished fact. He found that appellee advertised a radio broadcast program which never existed. All these acts and others recited by him he held unjustified, amounting to perpetration of fraud with the real purpose in mind to profit wrongfully from the advertising done by appellant.

He recited at length instances of unfair action on the part of the salesmen of appellee in Massachusetts, Texas, Louisiana, Kansas, Iowa, North Carolina and New York, in which false representations were made resulting in selling to appellant's dealers goods of appellee as those of appellant. He commented that the general manager of appellee had failed to explain in any adequate manner the deceptive and misleading advertising of his own company or his own acts and that the evidence in the record justified an inference that he expected the salesmen to do the things he practiced and they themselves accomplished. He pointed out that, subsequent to the entry of the decree in the District Court and the supersedeas granted therefrom, the same general manager was found guilty of contempt and both he and his company punished by this court and that, subsequent to issuance of the mandate of this court, he continued to evince an intent not to abide by the decree by employing tags in violation thereof. In one of his concluding paragraphs he said:

"The conduct of Overton Sachsteder, who so far as the management was concerned was the Aladdin Manufacturing Company, throughout the entire record is one of misrepresentation and deceit, his record placed together piece by piece over sixteen years, viewed in the light of all of these events can lead to no other conclusion. It is a fair conclusion to be drawn from the entire record that the business of the Aladdin Manufacturing Company was built upon the reputation established by The Mantle Lamp Company of America for Aladdin lamps. The stressing of radio advertising, where there was none, on trade-marks, where none were of record, informing dealers of national advertising, where there was none, his planned design for the use of 'mats' for advertising to dealers 'to tune their advertising in' when there was no national advertising by Aladdin Manufacturing Company to tune in to, and many other acts on the part of Overton Sachsteder makes it impossible to escape the conclusion that the infringement and unfair competition practiced by Aladdin Manufacturing Company was planned, wilful and deliberate, and intended to produce exactly the harm that it did The Mantle Lamp Company of America."

Accordingly he concluded that appellee should be held for exemplary damages

from and after January 1, 1932, it, having known that appellant had then entered the field and having been able from that time forward to guide its course so as not to damage appellant.

The damages recommended by the master included the cost of the Patent Office opposition $1,662.56, and costs and legal expenses in the instant case $16,852.47, or a total of $18,515.03. In addition he concluded that the salary of the general manager during the period of deliberate infringement should be included in the assessment of damages, the amount being, as determined by him in the supplemental report, $22,769. He included also as an element of damage cost of advertising, aggregating in the five years, $55,133.34. He justified this on the ground that through its method of advertising appellee had preyed upon the good will of appellant growing out of its favorable reputation and its national advertising, and on the theory that appellee had built up its business largely by wrongfully utilizing the good will of appellant. In this connection, he said, $11,428.75 was spent in 1933 for communications with dealers advising them to tune in on advertising when there was no advertising of any consequence and the only possible tuning in could have been in the national advertising of appellant, who sent 30 salesmen to cities in one state to establish the campaign then being supported by national and radio advertising. This advertising, he found, appellee took advantage of in connection with misrepresentations made by agents and sales accomplished largely by unfair competitive methods. Accordingly, he said, that portion of the advertising represented by the figure mentioned was a fair approximation of the amount that should be allowed as a part of the punitive damages. He concluded that appellant should recover a total amount of $153,043.45 as follows: gains and profits $56,626.08; punitive damages, consisting of costs of litigation $18,515.03; salaries $22,769.00 and advertising $55,133.34 and recommended a decree for $153,043.45.

■■■■■ Under the act covering trademarks, Title 15 U.S.C.A. Section 99, plaintiff was "entitled to recover, in addition to the profits to be accounted for by the defendant, the damages * * *." The procedure is analogous to that in patent cases. Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629. Before passage of the act of 1870, 16 Stat. 270, two remedies were open to the owner of a patent whose rights had been infringed, and he had his election between the two. He might proceed in equity and recover the profits which the infringer had made by the unlawful use of his invention, the infringer in such a suit being regarded as trustee of the owner of the patent as respects such gains and profits; or he might sue at law, in which case he would be entitled to recover, as damages, compensation for the pecuniary injury suffered by the infringement; the measure of damages in such case being not what the defendants had gained but what the plaintiff had lost. When the suit is at law, the measure of damages remains unchanged to the present time, the rule still being that the verdict must be for the actual damages sustained by the plaintiff. Damages of a compensatory character may also be allowed in equity where the gains and profits made by the respondent are not sufficient to compensate for the injury sustained. Gains and profits are still the proper measure of damages in equity suits, except in cases where the injury sustained by the infringement is plainly more than the aggregate of what was made by the respondent, in which event the provision is that the complainant shall be entitled to recover, in addition to the profits to be accounted for by the respondent, the damages he has sustained thereby. Birdsall v. Collidge, 93 U.S. 64, 23 L.Ed. 802; Tilghman v. Proctor, 125 U.S. 136, at pages 144, 145, 8 S.Ct. 894, 31 L.Ed. 664.

■■■■■ In law the infringer "is regarded as a mere wrong-doer compelled to make compensation for the injury he has inflicted. In equity he has a double character, being first treated as a species of agent or trustee practising the invention for the benefit of its true owner and obliged to pay to him the profits of the enterprise, and then, if, in the judgment of the court, the interests of the plaintiff so require, mulcted as a tort-feasor in a sum sufficient to redress the injury which the plaintiff has sustained." 3 Robinson on Patents, § 1050. In Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, at page 259, 36 S.Ct. 269, 272, 60 L.Ed. 629, the court, dealing with unfair competition and infringement of a trade-

mark, said: "In the courts of England, the rule seems to be that a party aggrieved must elect between damages and profits, and cannot have both. In this country, it is generally held that in a proper case both damages and profits may be awarded." See also Child v. Boston & Fairhaven Iron Works, C.C., 19 F. 258, at page 259.

The Act of Congress looks to the recovery of "damages"; it does not exclude exemplary damages; rather it must be taken to include all damages ordinarily recoverable under the facts and circumstances presented. That punitive damages may be allowed in such an action as this at law was recognized by the court in Press Publishing Co. v. Monroe, 2 Cir., 73 F. 196, 201, 51 L.R.A. 353, in this language:

"Plaintiff in error contends that the court erred in instructing the jury that it might award exemplary damages. That in certain classes of cases juries are authorized to give punitive or exemplary damages to punish a wrongdoer and to deter others from the commission of a like wrong is well-settled law in the federal courts and in the courts of this state. Day v. Woodworth, 13 How. [363] 370 [14 L.Ed. 181]; [Milwaukee, & St. P.] Railroad Co. v. Arms; 91 U.S. 489 [23 L.Ed. 374]; Voltz v. Blackmar, 64 N.Y. 440. In such cases exemplary damages may be given in addition to what may be proved to be the actual money loss of the plaintiff." To the same effect: Tilghman v. Proctor, 125 U.S. 136, at pages 139, 140, 8 S.Ct. 894, 31 L.Ed. 664.

Inasmuch as the jurisdiction of a court of equity had attached here, it had jurisdiction, in order to furnish full relief, to grant everything that might be recovered at law. Tilghman v. Proctor, 125 U.S. 136, at page 148, 8 S.Ct. 894, 31 L.Ed. 664; Root v. L. S. & M. B. Co., 105 U.S. 189, at page 205, 26 L.Ed. 975; Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 259, 36 S.Ct. 269, 60 L.Ed. 629. If the facts warranted, exemplary or punitive damages were properly allowed. Under the rules of Civil Procedure, 28 U.S.C.A. following section 723c, distinctions between forms of action have been abolished.

Courts have, in cases in which the action of the infringer was deliberate, fraudulent and wanton, allowed damages in addition to profits in the following instances: Hennessy v. Wilmerding-Lowe Co., C.C., 103 F. 90, 94; Simpson v. Davis, C.C., 22 F. 444; El Modello Cigar Manufacturing Co. v. Gato, 25 Fla. 886, 7 So. 23, 6 L.R.A. 823, 23 Am. St.Rep. 537; Sawyer v. Kellogg, C.C., 9 F. 601; Benkert v. Feder, C.C., 34 F. 534; Graham v. Plate, 40 Cal. 593, 6 Am. Rep. 639; Lynn Shoe Co. v. Auburn-Lynn Shoe Co., 100 Me. 461, 62 A. 499, 4 L.R.A.,N.S., 960. See also Brown, Trade-Marks (2d Ed.) 503. In the present case the master concluded and we agree that the acts of the infringer were wanton, wilful and intentionally fraudulent, not only in infringment but also in unfair competition.

Apparently the damages contemplated by the Trade-Mark Act are such as might be recovered in an action at law from any tort feasor. By its wilful, wanton and intentional infringement and unfair competition defendant was stamped a deliberate tort feasor. The evidence to be received, the circumstances to be considered and the amount of recovery should follow the rules covering tort actions. Consequently the master was justified in recommending allowance of damages. The only question is as to whether the amount recommended is proper or reasonable.

A tort feasor is liable for all consequences naturally resulting, all injuries actually flowing from his wrongful act, whether in fact anticipated or contemplated by him when his tortious act was committed. Recoverable damages, therefore, include compensation for all injury to appellant's business arising from wrongful acts committed by appellee, provided such injury was the natural and proximate result of the wrongful acts. Fidelity & D. Co. v. Bucki & Son Lumber, 189 U.S. 135, 23 S.Ct. 582, 47 L.Ed. 744. This includes injury to business standing or good will, loss of business, additional expenses incurred because of the tort and all other elements of injury to the business. 15 Amer.Jur. §§ 133, 134, 135, 136 and 138. These are the governing principles applying to compensatory damages.

Exemplary damages are allowed against a tort feasor whose acts are intentionally fraudulent, malicious, wilful or wanton. They have always been recoverable at common law. Scott v.

Donald, 165 U.S. 58, 17 S.Ct. 265, 41 L. Ed. 632. They are recognized in the jurisdiction where this cause was tried, Eshelman v. Rawalt, 298 Ill. 192, 131 N. E. 675, 16 A.L.R. 1311; Peters v. Lake, 66 Ill. 206, 16 Am.Rep. 593; Chicago & N. W. R. Co. v. Williams, 55 Ill. 185, 8 Am.Rep. 641; Chicago v. Martin, 49 Ill. 241, 95 Am.Dec. 590; Grable v. Margrave, 3 Scram. 372, 4 Ill. 372, 38 Am. Dec. 88; Consolidated Coal Co. v. Haenni, 146 Ill. 614, 35 N.E. 162; Kennedy Bros. v. Sullivan, 136 Ill. 94, 26 N.E. 382; and in the State of Indiana where appellee committed the acts complained of, State ex rel. Scobey v. Stevens, 103 Ind. 55, 2 N.E. 214, 53 Am.Rep. 482; Koerner v. Oberly, 56 Ind. 284, 26 Am.Rep. 34; Jeffersonville R. Co. v. Rogers, 38 Ind. 116, 10 Am.Rep. 103. In these jurisdictions, such damages are allowed, as sometimes said, in the interest of society, not as compensatory damages but rather in addition thereto, or as elsewhere said, as compensation to the injured party for the wrong suffered, though incidentally they may operate by way of punishment. Cairo & St. L. R. Co. v. Peoples, 92 Ill. 97, 34 Am.Rep. 112. They are not a favorite in law, however, Post v. Buck's Stove & Range Co., 8 Cir., 200 F. 918, 43 L.R.A.,N.S., 498; and are, therefore, to be allowed only with caution and confined within narrow limits. Whether damages be compensatory or exemplary, if unliquidated, when determined by the trier of facts, their propriety cannot be governed or measured by any precise yardstick. They must bear some reasonable relationship to the injury inflicted and the amount must rest largely in the discretion of the trier of facts, a discretion not to be arbitrarily exercised. Ordinarily this court will interfere only where it appears that an injustice has been done or it is clear that there has been error in law.

■ In the present case, there was direct proof that because of the fraudulent and wilful infringement and unfair competition of appellee, appellant incurred legal expenses aggregating $18,515.03. Counsel's fees necessitated by the tort have been said in some instances to be recoverable as a part of the compensatory damages and in other cases as a part of exemplary damages. As the master's finding of wilful and fraudulent conduct is sustained by the evidence, this sum was recoverable as compensatory damages and hence properly included in the amount recommended by him.

■ The master allowed as exemplary damages the salary of the general manager of the infringer during the period of the infringement, $22,769, and the amount expended by appellee during that infringement for advertising, $55,133.34. We are unable to appreciate by what process of legal reasoning the master might properly conclude that elements of costs in the infringer's business should be considered as either compensatory or exemplary damages incurred by appellant. Compensatory damages represent what appellant lost by way of injury to its business, including its good will, and exemplary damages may include only such sums as the master believed under the facts and circumstances were proper under the strict rules covering their allowance. We think the method of computing exemplary damages by including the general manager's salary and its cost of advertising a process in legal fallacy at variance with the legal principles above announced.

■ There was proof of injury to appellant's business in appellee's conduct, including injury to its good will and nullification of its advertising program, for which it expended large sums of money, over and above the profits gained by appellee. For such injury it was entitled to compensatory damages and in addition such limited exemplary damages as the facts and circumstances justify. Considering all of the evidence, we think that the total damage, including the injury to appellant's business and its good name, the nullification of its advertising, and all other elements, both compensatory and exemplary, amounted to not less than $25,000 and not in excess thereof, in addition to the expenditures incurred in litigation. Indeed we believe the evidence sustains the allowance of this sum purely as compensatory damages. We are not inclined to approve further punitive damages in view of the punishment meted out in the contempt proceedings. Obviously the master was the trier of the facts, and as such, was endowed with a discretion but he was in error in matter of law in giving appellant credit for appellee's costs.

■ The cause might well be remanded with direction to the court to con-

sider again the damages to be allowed, but in view of the fact that the master has previously determined an amount in excess of what we believe to be reasonable under the rules and as the evidence is all before us, we believe it would be futile so to do and thus bring about an unnecessary prolongation of this litigation. Accordingly the master's report should be approved in the allowance of damages in the sum of $18,515.03 for costs and expenses incurred and in the reduced amount of $25,000 for all other damages. The total recovery should be: Gains and profits $56,626.08; Damages $43,515.03, or a total of $100,141.11.

Accordingly the decree of the District Court will be reversed in so far as it adjudged that appellant was not entitled to recover from appellee either profits or damages and in so far as it directed that the costs of the accounting be assessed against appellant. The master's report will be approved except as to the allowance of damages, which shall be fixed at $43,515.03. Judgment will enter against appellee for the profits and damages assessed,—the total of $100,141.11. Appellee will pay all costs of this appeal. In all other respects, the decree of the District Court is affirmed.