BOARD OF TRADE OF CITY OF CHICAGO v. TUCKER et al.

(Circuit Court of Appeals, Second Circuit. January 12, 1915.)

No. 113.

**1. INJUNCTION ☞223—QUOTATION OF BOARD OF TRADE PRICES—VIOLATION— "CONTINUOUS QUOTATIONS."**

An injunction restraining a broker from obtaining, using, and distributing the quotations of a Board of Trade without acquiring a right to such quotations was not limited in its application to "continuous quotations" defined in contracts with the board's subscribers as quotations furnished oftener than at intervals of 10 minutes, but was violated where the broker's employé at 10-minute intervals noted and telephoned to the broker the last quotation posted in the office of a subscriber of the Board, especially where it did not appear that each of such quotations was not one item of the continuous quotations.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 448–473; Dec. Dig. ☞223.

For other definitions, see Words and Phrases, Second Series, Continuous Quotations.]

**2. EXCHANGES ☞13—QUOTATION OF PRICES—PUBLICATION.**

The posting of quotations furnished by a Board of Trade to its subscribers in the office of a subscribing broker, was not a publication which would terminate the Board's property rights in the quotations, or authorize a nonsubscriber to use and distribute such quotations.

[Ed. Note.—For other cases, see Exchanges, Cent. Dig. § 16; Dec. Dig. ☞13.

Quotations of prices and transactions on exchanges, see note to Sullivan v. Postal Telegraph Cable Co., 61 C. C. A. 2.]

**3. INJUNCTION ☞230, 232—PUNISHMENT FOR VIOLATIONS—AMOUNT OF FINE.**

A proceeding to punish, as for contempt, a violation of an injunction restraining a broker from using the quotations of a Board of Trade, was civil, and not criminal, and the court correctly held that a dual punishment should not be imposed, but one simply directed towards making good to complainant the loss it had sustained from the violation.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 502–516, 519–528; Dec. Dig. ☞230, 232.]

**4. INJUNCTION ☞232—PUNISHMENT FOR VIOLATIONS—AMOUNT OF FINE.**

In punishing the violation of an injunction as a civil contempt, the court may reimburse the complainant for the necessary expense of enforcing the injunction; but extravagant disbursements should not be allowed.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 519–528; Dec. Dig. ☞232.]

**5. INJUNCTION ☞231—PUNISHMENT FOR VIOLATIONS—AMOUNT OF FINE.**

In punishing the violation of an injunction as a civil contempt, the allowance of complainant's expenses is a matter resting in the discretion of the District Judge, and unless such discretion has been abused his action will not be disturbed.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 517; Dec. Dig. ☞231.]

**6. INJUNCTION ☞233—PUNISHMENT—VIOLATIONS—COSTS.**

On a motion to punish the violation of an injunction as a contempt, the successful moving party was entitled to taxable costs, not, however, to be added to the fine and collected by a body execution, but merely to be a money judgment collected in the usual way.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 518; Dec. Dig. ☞233.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

221 F.—20

Appeal from the District Court of the United States for the Western District of New York.

This cause comes here upon cross-appeals from an order of the District Court, Western District of New York, finding defendant Tucker guilty of a contempt of the jurisdiction and authority of said court in violating an injunction granted under decree entered January 12, 1906, on final hearing in the above-entitled action, and imposing upon said defendant a fine of $1,800 to be paid to complainant. The opinion of Judge Hazel will be found in 221 Fed. 300. Defendant appealed on the merits. Complainant appealed on the ground that the fine should have been large enough fully to reimburse it for all its expenditures in prosecuting the contempt proceeding. It asserted that these expenditures amounted to $14,271.65.

See, also, 202 Fed. 208.

Henry S. Robbins, of Chicago, Ill., for complainant.

James O. Moore and George Clinton, both of Buffalo, N. Y., for defendants.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. [1] The decree for injunction was justified under the decision of the Supreme Court in Board of Trade v. Christie, 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031. It was not appealed from, and the right to issue the injunction is not involved in the appeal now before us. The injunction prohibited defendant from obtaining, using, distributing, etc., "the quotations of complainant, or any of them," until he shall have acquired the right to receive said quotations:

(a) By contract or purchase from complainant;
(b) With complainant's consent from some telegraph company authorized by complainant to distribute said quotations; or
(c) Under a judgment or degree against complainant in a court of competent jurisdiction.

There is no proof that defendant received complainant's quotations in either of the three ways above indicated.

It is asserted that many of the quotations, which defendant used and distributed, he obtained from some source other than those which complainant sought to protect by this injunction. That circumstance is unimportant, because as to very many of the quotations, which he used and distributed, there is a concession on the brief of his counsel which makes it unnecessary to discuss the testimony. It is there conceded that defendant admitted that he employed a man to visit the office of another broker, who, under a contract with complainant, of the sort considered in the Christie Case, supra, had what is known as the "continuous quotation service." When quotations thus received by the broker were posted on the blackboard in his office, defendant's employé noted the last quotation on each option and then telephoned it to defendant, who used and distributed the quotation thus telephoned. After an interval of 10 minutes, defendant's employé noted and telephoned another quotation, which defendant similarly used and distributed.

Much is made in argument of the phrase "continuous quotations." This phrase is defined in the contracts which complainant makes with its subscribers as meaning "every service of quotations wherein the price of any commodity shall be quoted oftener than at intervals of 10 minutes." It is contended that the injunction must be confined to "continuous quotations" only. But the injunction says nothing about "continuous quotations"; on the contrary, it expressly restrains the use of "the quotations of complainant, or any of them." Certainly each item that defendant's employé saw written on the board, mentally noted, and telephoned to defendant was a quotation of complainant sent by it to the subscribing broker, who posted it in his office under contract with complainant. Moreover, so far as the record shows, all the quotations which the various subscribing brokers received and posted on their blackboards were the "continuous quotations" defined in their contracts. Each of these quotations was one item of the continuous quotations; it cannot be said that some of them were and some of them were not. As continuous quotations all of them are covered by the broker's contract and protected by its terms. The defendant cannot change them from continuous to noncontinuous quotations merely by noting and using them only at 10-minute intervals.

[2] Under the federal decisions, especially the Christie Case, supra, the posting of these quotations on a blackboard in the office of a subscribing broker is not the sort of publication which will terminate complainant's property right in them. Violation of the injunction is abundantly proved.

[3-5] Referring now to complainant's appeal: The proceeding to punish for contempt was civil, not criminal, and Judge Hazel correctly held that a dual punishment should not be imposed, but one simply directed towards making good to complainant the loss it had sustained because of defendant's disobedience of the order. In this case, as in very many others, it is not possible to assess any particular sum of money which will represent complainant's business loss. It is well settled, however, in such cases, that the court may undertake to reimburse complainant for the expense to which it has necessarily been put in enforcing the disregarded order of the court. That does not mean, however, that the sum should be so large as to cover extravagant disbursements. It is a matter resting in the discretion of the District Judge, and his action will not be disturbed, unless such discretion has been abused. In this case we might, if the matter had come before us in the first instance, have fixed some larger sum; but we cannot find that there has been any abuse of discretion in assessing the amount at $1,800.

[6] We think, however, that complainant was entitled to the taxable costs of the proceeding, and should be allowed to include that amount in the order. This additional sum is not to be added to the fine, so as to be collectible by a body execution; it will merely be a money judgment, to be collected in the usual way.

With this modification, the order is affirmed. Costs of this appeal to complainant.