**JOHN B. STETSON CO. v. STEPHEN L. STETSON CO., Limited, et al.**

District Court, S. D. New York.

Nov. 17, 1944.

Harper & Matthews, of New York City, and Saul, Ewing, Remick & Harrison, of Philadelphia, Pa. (Allen S. Olmsted, 2d, of Philadelphia, Pa., and Murray F. Johnson, of New York City, of counsel), for plaintiff.

Conboy, Hewitt, O'Brien & Boardman, of New York City, for defendant Stephen L. Stetson, Limited.

BRIGHT, District Judge.

This matter comes up on a motion to confirm the special master's report as to the amount of damages and loss of profits sustained by the plaintiff by reason of the contemptuous violation by the defendant Stephen L. Stetson Co., Ltd., of an injunction decree. Objection is made to the report by both parties.

The history of the litigation is fully set out in the reports. It is clear, from what has been written, that the defendant, at any rate since March 4, 1936, has been fully advised of what it should do and what it should not do in the conduct of its business. It was early told that its method of advertisement was "equivocal"; that its acts tended to confuse the public between plaintiff's hats and defendant's because of the manner in which the word "Stetson" was used; and had led to much misrepresentation on the part of dealers which the defendant had condoned; that it had used the quoted name because it had become the best known hat name in the world; and by a system of "artfully devised advertisements," it had succeeded in maintaining in the trade a state of what was to it a very advantageous uncertainty. Carefully worded advertisements and notices of differentiation were prescribed. John B. Stetson Co. v. Stephen L. Stetson Co., D.C., 14 F.Supp. 74. The trial court predicated its injunction upon unfair competition, but on appeal the Circuit Court of Appeals decided that the decree should have found and enjoined trade-work infringement as well. 2 Cir., 85 F.2d 586, certiorari denied 299 U.S. 605, 57 S.Ct. 232, 81 L.Ed. 446. Subsequently, this motion was made to punish the defendant for violation of the injunction order, which was denied, and the denial was reversed in 2 Cir., 128 F.2d 981. Defendant's attention was then called to the fact that it

was plain that by displaying the Stetson name so conspicuously it had violated the spirit of the injunction and defeated its purpose so as to benefit from the confusion between its goods and the plaintiff's, and the injunction was extended so as to prohibit the use of the name "Stetson" other than as part of the notice of differentiation. Defendant was also required to recover from its dealers the offending display advertising, and to instruct them not to use the name in advertising except as part of the notice. It later appealed from the interlocutory judgment entered upon this mandate, claiming that it did not follow the direction of the Circuit Court of Appeals, in that it required defendant to account for expenses and damages sustained by plaintiff, including defendant's profits, whereas the Appellate Court had remanded for the assessment of "damages." That contention was overruled. 2 Cir., 133 F.2d 129.

The special master appointed to take proof as to damages and expenses which the plaintiff had sustained, including the defendant's profits, has reported as follows:

| | |
|---|---|
| Defendant's profits | $13,892.95 |
| Plaintiff's counsel's fee | 6,500.00 |
| Plaintiff's counsels' disbursements | 298.69 |
| Damages to plaintiff's business, etc. | 7,500.00 |
| Which total of | $28,191.64 |

the special master recommends be imposed as a fine, plus the amount to be fixed by this court as his fee for service, together with a bill of $150 for stenographer's fees in the preparation of the report.

Preliminarily, the defendant objects that the purpose of a proceeding to punish for civil contempt is to reimburse plaintiff for loss and expenses occasioned by the contumacious conduct of the defendant and is not of a punitive character, arguing that inasmuch as the fine exceeds the defendant's profits and capital investment over the period in question, it is beyond its ability to pay and would force it out of business.

The statute, however, does not measure the fine by defendant's ability to pay. 15 U.S.C.A. §§ 96 and 99. And in the nature of things, it seems quite probable that no one, who has already received sufficient warning that its method of doing business is unlawful and who takes the

chance again, should expect that the damages and loss caused by its violation, both of the law and of a judgment of this court, would be measured by what it says is its ability to pay, particularly where it appears that it has done a very large business, in a large part the result of its use of plaintiff's well established and well known trade name. Under Sections 96 and 99, damages and profits may be recovered, and they may be increased to thrice the amount awarded. Leman v. Kreutler-Arnold Co., 284 U.S. 448, 457, 52 S.Ct. 238, 76 L.Ed. 389; Aerovox Corporation v. Concourse Electric Co., 2 Cir., 90 F.2d 615, 617; Mishawaka Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203-208, 62 S.Ct. 1022, 86 L.Ed. 1381.

The subject matter of the objections will be discussed in the order set forth in the special master's report.

### The Proper Accounting Period.

The special master found that the period should begin December 1, 1938, and end August 28, 1942, and that such account should also include all hats sold prior to August 28, 1942, and delivered after that date. He permitted plaintiff to waive the earliest period from December 1, 1938, until May 1, 1939, and required that defendant's account be stated from May 1, 1939.

Defendant insists that it complied with the direction of the Circuit Court of Appeals when it sent out its letter of August 8, 1942, that on or before that date it had fully complied with all of the decrees of the court, its alleged contumacious conduct had then ended, and the accounting period should, therefore, end on that date; objects to the permission granted by the master that plaintiff waive an accounting for the period between December 1, 1938, and May 1, 1939, during which time it claims losses were sustained for which it should be given credit; and also to the finding that "orders booked" prior to August 28, 1942, and delivered after that date were sales within the meaning of the order of the court.

I think the special master was right because, (1) the order appointing him required defendant to account from December 1, 1938, to the date of the order— August 28, 1942; (2) he had the right to permit plaintiff to waive the period from December 1, 1938, to May 1, 1939, during which there were losses, Crosby Steam Gage & Valve Co. v. Consolidated Safety Valve Co., 141 U.S. 441-457, 12 S.Ct. 49, 35 L.Ed. 809; Duplate Corporation v. Triplex Co., 298 U.S. 448-458, 56 S.Ct. 792, 80 L.Ed. 1274; and (3) the contemptuous disregard of the court's order and the use of advertisements in violation of that order produced the sales which were "booked" prior to August 28, 1942, and delivered afterwards. Those sales were in a substantial amount and having been obtained in defendant's own wrong, it should not profit thereby.

*Should the Defendant's Expenditure of Sums for Additional Overhead after August 28, 1942, be Deducted in the Account?*

The defendant contended that the profits on the sales prior to August 28, 1942, but delivered after that date and up to December 31, 1942, should be reduced by $7,190.63, all spent after August 28, 1942, which includes the following items:

| | |
|---|---:|
| Advertising | $2,940.10 |
| Salary to Stephen L. Stetson | 1,930.75 |
| Selling expenses for show rooms and liquor | 152.24 |
| Stationery | 344.97 |
| Payments to Comerford for office work | 180.29 |
| Bad debts | 655.48 |
| Legal and professional | 121.00 |
| Taxes other than Federal income taxes | 538.80 |
| Expressage | 184.54 |
| Telephone | 87.08 |
| Interest | 27.88 |
| Donations | 27.50 |
| | $7,190.63 |

The master disallowed all of these items except $900 for salary paid to Mr. Stetson, the basis of his disallowance being that the charge for advertising was for that put out after the hats in question had been ordered, and, therefore, in no way contributed to their sale or the profits realized therefrom; and that the other items were not proven either to have related to sales made prior to August 28 or to have been incurred in producing profits in the amount accounted for.

Defendant objects to this disallowance, contending that deductions to the extent of 35.21% thereof (that percentage being the ratio between $237,223.37 of goods shipped between August 28 and December 31, 1942, and $83,532.82 of goods ordered before August 28 and shipped thereafter) should

have been charged against profits for the period, because the greater part of advertising costs in the period represents the preparation and mailing of seasonal window and counter display cards which are customarily sent with the goods and the cost of which is an integral part of the cost of producing merchandise, and because the items were properly proven and uncontradicted.

Plaintiff objects to any deduction for compensation to Stephen L. Stetson, and in no event of more than 35.21% of $900, or $306.89, arguing that as he was the president, all of the officers and stockholders and the entire board of directors of the defendant Stetson Company, and was thus the individual who devoted his time to the illegal acts now under review, he should not be permitted to deduct his drawings from the business profits.

As discussed hereafter, I find that defendant is entitled to a reasonable deduction for salary paid to Stephen L. Stetson, regardless of the fact that he is responsible for the violation of the decree. His services helped produce the profits from which the plaintiff is to benefit, and the reasonable value thereof should be deducted in the computation. It also appeared that the money paid to D. Bindelglass, aggregating $120, being a part of the item of $121, was for services as an accountant and went, in part, into the production of profits. And in the same category are the services proven to have been rendered in the defendant's office by C. Comerford, aggregating $180.29. And certainly some part of the expressage of $184.54 was similarly expended. It is also clear to me that for some time before this period Stephen L. Stetson had increased his weekly drawings to $75, which I find was reasonable, and the amount of $900 allowed by the master should be accordingly increased. Except in these particulars I approve the action of the master. These changes will require a modification of his report as follows:

| | |
|---|---|
| Salary to Stephen L. Stetson.... | $1,350.00 |
| C. Comerford ................. | 180.29 |
| D. Bindelglass ............... | 120.00 |
| Expressage .................. | 184.54 |
| | $1,834.83 |

Of this amount 35.21%, or $646.04, should be credited to defendant against the profits for this period.

*Should the Cost of Defendant's Advertising in the Sum of $13,134.22 be Deducted in the Account?*

From December 1, 1938, to August 28, 1942, defendant incurred the sum mentioned for advertising, the greater part of which was for that done "outside the notice of differentiation," and later found contumacious. The special master allowed the deduction in the determination of profits.

Plaintiff objects to this allowance, contending that it was the very advertising which injured it and the allowance would, in effect, make it pay for something which had caused it damage, citing Larson Co. v. Wrigley, 7 Cir., 20 F.2d 830–832, reversed on other grounds 277 U.S. 97, 48 S.Ct. 449, 72 L.Ed. 800.

There is no question but that the advertising was in a large part productive of the profits which now, in part, accrue to the benefit of plaintiff. The Larson case upholds a deduction where the advertising was incurred in good faith, however unwisely or improvidently. That the master was right seems to be justified by that case, as well as by Gordon v. Turco-Halvah Co., 2 Cir., 247 F. 487–492; Aladdin Mfg. Co. v. Mantle Lamp Co., 7 Cir., 116 F.2d 708–714; Coffield Motor Washer Co. v. Wayne Mfg. Co., 8 Cir., 255 F. 558–562; Metallic Rubber Tire Co. v. Hartford Rubber Co., 2 Cir., 275 F. 315–323; certiorari denied 257 U.S. 650, 42 S.Ct. 57, 66 L.Ed. 416; Flat Slab Patents Co. v. Turner, 8 Cir., 285 F. 257–278, certiorari denied 262 U.S. 752, 43 S.Ct. 700, 67 L.Ed. 1215.

*Should Federal Income Taxes Paid by Defendant be Deducted?*

Defendant, in its accounting, deducted $828.69 paid for federal income taxes during the accounting period. The master disallowed the deduction, holding that the tax was on profits and was not a part of the cost of producing hats. Defendant claims this ruling was error.

In Larson Co. v. Wrigley Co., 277 U.S. 97, 48 S.Ct. 449, 72 L.Ed. 800, such a deduction was denied where a conscious and deliberate wrongdoing was found, and in view of the fact that the injured party would have to pay a tax on the profits of the infringer when it receives them. In view of what has been said, and also the finding of the master, I am inclined to agree with him, notwithstanding the statements in Stromberg Motor Devices Co. v.

Zenith-Detroit Corporation, 2 Cir., 73 F. 2d 62–65, and Metallic Rubber Tire Co. v. Hartford Rubber Works Co., 2 Cir., 275 F. 315–326, certiorari denied 257 U.S. 650, 42 S.Ct. 57, 66 L.Ed. 416.

*Were Fees Paid by Defendant to Its Attorney Properly Deductible?*

■ Defendant deducted $500 paid on December 22, 1941, to Mr. Martin Conboy, its attorney, for his fee, and the further sum of $89.60 paid May 15, 1942, to the said attorney, for his disbursements. The master disallowed both deductions, holding that defendant had not furnished a satisfactory explanation of the items so as to bring them in under expense of production and sales, and that the service rendered had nothing to do with producing profits.

Defendant alleges error claiming that its actions now adjudged contumacious were not wilful, that there was an honest legal dispute as to whether they were in violation of the decree, and that upon plaintiff's motion, which was two-fold in scope—(1) to enjoin the use of the name Stetson altogether, and (2) to punish for contempt—it was successful insofar as the first part was concerned and payment to its attorney for such successful defense was entirely proper.

Mr. Stetson, however, on cross-examination, testified that the sum of $500 was paid on account of the whole case, for services rendered for the earlier case before December 1, 1938, not for services in connection with the motion for contempt, and that he did not recall whether the amount paid for disbursements was in connection with the contempt motion. There was no other evidence as to the purpose for which these sums were paid.

For the reasons stated by the master, and for the additional reason that defendant has failed to prove that these items of expense were properly deductible, as having been spent in its defense in this proceeding, I sustain the master's ruling.

*Should Withdrawals by Stephen L. Stetson be Deducted in the Account?*

■ In the defendant's account rendered for the period from December 1, 1938, to August 28, 1942, there is deducted $14,383.51 for salary paid to Mr. Stetson. Of this amount, $1507.24 was for salary alleged to have been paid between December 1, 1938, and April 30, 1939, the period during which there were losses and as to

which plaintiff was permitted by the master to waive an accounting. Any deduction of the balance of $12,876.27, or any part thereof, was and still is objected to by plaintiff.

The special master concluded that a salary of $50 a week, aggregating $8700 for the accounting period, would be reasonable, and that any amount in excess thereof was a distribution of profits to Mr. Stetson, not taxable as expenses, and should be disallowed. The defendant claims error.

It appeared without dispute that Stephen L. Stetson was the president of the defendant Stetson Company, that it had no other officers, that he constituted the full board of directors, that he owned all the stock of the company, that he had no contract of employment with the defendant, and his drawings were not fixed by any vote of the board of directors. Mr. Stetson, in his testimony, stated that he had personal responsibility for the advertising, that he OK'd everything that went out, and approved all advertisements using the name of "Stetson" outside of the notice of differentiation. He also testified that he rendered services to the company in taking charge of all financial matters, all cash books, purchasing journals, purchasing ledgers, supervision of all mail and advertising matter, designing sample lines, supervising salesmen on the road, the inspection of hats coming through on orders, and that he assisted in expediting orders.

That the recipient of the salary was the one instrumental in the wrongdoing is not decisive, even where such conduct was particularly deliberate and deceitful, providing he was engaged in the conduct of the business and in the production of profits. Aladdin Mfg. Co. v. Mantle Lamp Co., 7 Cir., 116 F.2d 708–713; Callaghan v. Myers, 128 U.S. 617–664, 9 S.Ct. 177, 32 L.Ed. 547. Where an officer's salary was in part fixed and the balance dependent upon a percentage of profits made, a deduction of the regular salary plus the commission was approved. Stromberg Motor Devices Co. v. Zenith-Detroit Corporation, 2 Cir., 73 F. 2d 62–65, petition for writ of certiorari dismissed upon stipulation, 294 U.S. 735, 55 S.Ct. 509, 79 L.Ed. 1263. The question seems more to be whether the amount sought to be deducted is reasonable under the circumstances disclosed by the evidence, or whether the amount taken were in the nature of a distribution of profit or for some other reason. National Folding Box & Paper Co. v. Dayton Paper Novelty

Co., C.C. Ohio, 95 F. 991–994; Rubber Co. v. Goodyear, 9 Wall. 788, 76 U.S. 788–803, 19 L.Ed. 566; W. H. Miner, Inc. v. Peerless Equipment Co., 7 Cir., 115 F.2d 650–656, certiorari denied 312 U.S. 687, 61 S.Ct. 615, 85 L.Ed. 1125.

Does the evidence show, therefore, that the amount sought to be deducted by the defendant was reasonable under the circumstances of this case, or did such amount include distribution of profits to Mr. Stetson?

It is clear to me, as it was to the master, that for a long time Mr. Stetson contented himself with weekly drawings of $50 a week, and the balance was for certain personal disbursements more in the nature of a distribution of profits. It is true that his entire drawings were charged upon the books as salary at the end of the fiscal year. He testified that he never had any stated salary, and that about a year before he testified he had started to take $75 when things got a little higher. From a statement in evidence this increase would appear to have begun in September, 1941. Prior to that, the predominating figure is $50 per week.

I find, therefore, that defendant should be allowed a credit for payments of salary to Mr. Stetson of $50 a week from May 1, 1939, to September 1, 1941, and of $75 a week thereafter to August 28, 1942. If my computations are correct, the credit would be:

| | |
|---|---|
| 121 weeks at $50 | $6,050 |
| 52 weeks at $75 | 3,900 |
| | $9,950 |

*Was Interest on Defendant's Invested Capital Properly Deducted in the Defendant's Account?*

Defendant claims that its invested capital was $8,000 and that it was entitled to 6% interest thereon during the accounting period, amounting to $1588.84, as a deduction. The master allowed the deduction and the plaintiff objects. The allowance would seem to be justified under Stromberg Motor Devices Co. v. Zenith-Detroit Corporation, 2 Cir., 73 F.2d 62–64; Larson Co. v. Wrigley Co., 7 Cir., 20 F.2d 830–835; Stromberg Motor Devices Co. v. Detroit Trust Co., 7 Cir., 44 F.2d 958–963; Starr Piano Co. v. Auto Pneumatic Action Co., 7 Cir., 12 F.2d 586–589; Motor Player Corporation v. Piano Motors Corporation, D.C., 19 F.2d 993–994.

*Allowances to Plaintiff for Legal Expenses.*

The master charged the defendant with and allowed to the plaintiff the following amounts for counsel fees:

| | | |
|---|---|---|
| On the original contempt proceeding | $3500 | |
| Appeal to the Circuit Court of Appeals | 1000 | $4500 |
| Appeal to the Circuit Court of Appeals from the decree upon its mandate | | 500 |
| For proceedings before the special master and before this court | | 1500 |
| | | $6500 |

Plaintiff objects that the amounts allowed were insufficient, and defendant, that they were excessive. It is not contended that no award shall be made; the attacks are upon whether or not the amounts allowed are reasonable.

Under Civil Rule 16 of this court, "A reasonable counsel fee, necessitated by the contempt proceeding, may be included as an item of damage." Counsel fees for services in the contempt proceedings are properly awarded. They should be for such services and disbursements as are reasonably necessary in the proceeding.

The testimony as to the services rendered is that the New York counsel, testifying from his diary, began his work on the contempt motion on June 12, 1941, and from then spent 522 hours, his partners approximately 100 hours, and his associates in his office 70 hours, a total of 692. Of that time, he had devoted 441 hours, his partners 85, and his associates 32 hours before the amended interlocutory judgment was signed on March 1, 1943. Philadelphia counsel, without a diary, testified that he had spent the same length of time as New York counsel and he thought his associates had devoted the same length of time as did the New York associates. The plaintiff has paid bills for both sets of counsel aggregating $8000 exclusive of costs and expenses. (This testimony was stricken out by the master.) The value of these services, on the motion to punish for contempt, which was denied, the motion to reargue and the

submission of additional evidence, which was granted and the original decision adhered to, on plaintiff's appeal upon which it was successful, upon the dispute as to the form of the order to be entered on the mandate and upon the appeal from that order, upon which plaintiff was also successful, as well as upon the hearing before the special master, and upon the motion to confirm his report, was appraised by Mr. George Gordon Battle at $20,000 for both sets of counsel, $15,000 to March 1, 1943, and $5,000 thereafter, and by Mr. Lucius E. Varney at $30,000, $22,000 for the first period and $8,000 for the second. For the defendant testimony of the value of the services of a competent attorney was given as follows:

| | Mr. Robert W. Maloney | Mr. Ludwig Wilson | Mr. William Dike Reed |
|---|---|---|---|
| On original motion to punish... | $ 500 | $ 350 | $ 500 |
| Appeal from its denial | 750 | 350 | 500 |
| Appeal from order on mandate | 150 | 150 | 250 |
| Proceedings before master | 600 | 500 | 600 |
| | $2000 | $1350 | $1850 |

Stress is heavily laid by plaintiff on the fact that this was and is more than the ordinary motion to punish for contempt; that it required wide and extensive investigation of defendant's advertising practices; that it was vital to the protection of a trade-mark of a company doing a gross business of $9,000,000 a year, and that an extension of the injunctive provision of the original order was procured which further protected the name "Stetson." On the other hand, defendant contends that, in the last anaylsis, it was but a motion to punish for contempt, by counsel who were fully cognizant of what had gone before, and in which two sets of counsel were not necessary and who, in fact, largely duplicated each others services.

 The testimony is irreconcilable, and there remains but the determination of what is reasonable and necessary. In this respect, I am not convinced that it was necessary for two sets of counsel in two cities to devote the extensive amount of time testified to here to a motion. Nor, if New York counsel were competent to prosecute and argue the matter here (of which there can be no doubt, and as to which no question is raised) was it necessary that upon such a motion, and upon the argument of the appeal three counsel, equally competent, should attend. The preliminary investigation of defendant's practices may well have invited and required the attention of counsel in both places. But, if the imposition of legal expenses is not to be punitive, the award for such expense must be governed more by what was necessary and reasonable than what was actually paid. I find, therefore, that there should be allowed to plaintiff for legal expenses the following sums which I deem reasonable and sufficiently ample:

| | |
|---|---|
| On original contempt motion | $2,500 |
| On appeal from that order | 500 |
| On appeal from order on mandate | 250 |
| For proceedings before master and here | 1,500 |
| | $4,750 |

*Disbursements of the Attorneys for the Plaintiff and for Accountant and Witness Fees.*

Plaintiff claimed as necessary disbursement amounts paid to

| | |
|---|---|
| Harper & Matthews, its New York attorneys | $1,018.91 |
| Saul, Ewing, Remick & Harrison, its Philadelphia attorneys | 399.93 |

Of the amount claimed as disbursements the master allowed the following items:

| | |
|---|---|
| Shorten investigation of defendant | $ 25.00 |
| U. S. Marshal, serving petition and order to show cause | 4.30 |
| Copy of Judge Conger's opinion | 1.25 |
| Copy of "Hat Life" for use as exhibits | 4.75 |
| Copies of newspapers | 5.90 |
| Portfolios for binding newspapers | 13.06 |
| Premium on appeal bond | 10.00 |
| Printing record on first appeal | 67.22 |
| Printing brief on first appeal | 31.51 |
| Filing reply brief | 5.00 |
| Two copies of opinion of Circuit Court of Appeals | 10.00 |
| 100 copies of that opinion, reduced from $13.94 claimed to | 1.00 |
| Four copies of Judge Hulbert's interlocutory judgment on mandate | 5.40 |
| U. S. Marshal, serving interlocutory judgment | 4.30 |
| Total | $188.69 |

Some of the other items claimed were disallowed on the ground that a substantial amount thereof had already been taxed as costs and should be recoverable in the final decree; and because on the second appeal no appellate costs were awarded to either side; the balance representing telephone, travelling and other items were disallowed.

Of the amount claimed by Philadelphia counsel for plaintiff, the master allowed the following items:

| | |
|---|---:|
| Purchase of hat in Buffalo and investigation | $ 5.00 |
| William Bagley investigation at Boston | 56.00 |
| Four investigations | 20.00 |
| Two hats purchased | 9.00 |
| One investigation | 15.00 |
| Gallivan for hat purchased in Buffalo | 5.00 |
| Total | $110.00 |

The balance, being mostly telephone and telegraph charges, was disallowed.

Plaintiff makes no objection to the disallowance of the disbursements mentioned. Defendant specifically objects to $100 allowed for investigations and purchases and to the $25 for the investigation of Shorten, on the ground that the record is barren of any evidence that these expenses were necessary, to the conduct of these proceedings; and objects generally to the allowance of $298.69, the total of the disbursements allowed as above set out. I think the master's action in the particulars mentioned, except as mentioned below, was correct. The amounts expended for the investigation, under the circumstances of this case, are properly allowed as damages. The evidence shows that they were so spent. I can see no necessity, however, nor reason for allowance, of the items of portfolios $13.06, for more than one copy of opinion of Circuit Court of Appeals, $5, nor for 100 copies of it $1, nor for more than one copy of Judge Hulbert's interlocutory judgment, $4.05, and the disbursements are reduced by the sum of $23.11.

Plaintiff also claimed that there should be assessed against the defendant the amount spent by it in producing from Philadelphia the witnesses Bender, its comptroller, and Leib, its accountant, as well as the fee of $900 charged by the firm of certified public accountants by whom

Mr. Lieb was employed. The master disallowed these items under Merrell Soule Co. v. Powdered Milk Co., 2 Cir., 7 F.2d 297, 298. To this disallowance plaintiff objects.

In the Merrell Soule case, this Circuit, criticizing Flat-Slab Patents Co. v. Turner, 8 Cir., 285 F. 257–284 suggests that the practice of allowing for the overhauling of defendant's books by an accountant "employed by the master" is perilous; and that an award for the cost of sending plaintiff's own chief accountant and his assistants to make such examination, lends itself to an easy abuse which is "sufficient reason for extreme caution in permitting anything of the kind." In Gordon v. Turco-Halvah Co., 2 Cir., 247 F. 487–492 this Circuit held there was power to make the plaintiff whole for all reasonable expenses incurred, including a counsel fee, even though such expense might not be taxable. The Flat Slab case, as stated in the Merrell Soule case, is authority only with reference to the employment of an accountant by the master, which expense was allowed in that case. In Board of Trade v. Tucker, 2 Cir., 221 F. 305, 307, it was decided that plaintiff might be reimbursed for expense to which it has necessarily been put in enforcing the decree, but "That does not mean, however, that the sum should be so large as to cover extravagant disbursements," and there $1800 was allowed as against a claim of $14,271.65 for expenditures incurred. The disallowance is sustained in view of the Merrell Soule case and National Brake & Electric Co. v. Christensen, 7 Cir., 38 F.2d 721–723.

### Interest on the Award.

The master allowed interest on the amount of the award found by him from the date of his report, in other words, from the date when the damages were liquidated, citing Duplate Corporation v. Triplex Glass Co., 298 U.S. 448, 56 S.Ct. 792, 80 L. Ed. 1274; Crosby Steam Gage & Valve Co. v. Consolidated Safety Glass Co., 141 U.S. 441–457, 12 S.Ct. 49, 35 L.Ed. 809; Tilgham v. Practor, 125 U.S. 136–160, 8 S. Ct. 894, 31 L.Ed. 664. Plaintiff contends that because of the deliberate violation of the injunction, interest should be allowed from the date when the contempt proceedings were started—July 2, 1941; and this the more so because the special master had already found that the defendant's bad faith had been adjudicated by the Circuit Court of Appeals.

The Duplate case allowed interest from the date the damages were liquidated, and Mr. Justice Cardozo further stated [298 U.S. 448, 56 S.Ct. 797]: "There are no exceptional circumstances justifying a departure from what is at least the general rule." There it was established that the defendants were not conscious or deliberate infringers, and acted in good faith. And the Crosby Valve and Tilgham cases hold likewise. The same principle was followed in Larson Co. v. Wrigley Co., 7 Cir., 20 F.2d 830–836, reversed on other grounds in 277 U.S. 97, 48 S.Ct. 449, 72 L. Ed. 800, where there was clear evidence of oppressive and forestalling tactics on the part of Wrigley. On the other hand, interest was allowed from the date of the notice of infringement in Duro Co. v. Duro Co., 3 Cir., 56 F.2d 313–316, where defendant had full notice of complainant's rights and chose deliberately to run chances; and for the same reason from the date of a prior report in National Folding Box & Paper Co. v. Dayton Paper Novelty Co., C.C. Ohio, 95 F. 991–996. I think here that defendant deliberately took the chance and profited by it, and interest should be computed from the date of the first objectionable advertisement which I think the evidence shows was December 1, 1938.

### Was the Award to Plaintiff for Damages Proper?

The special master reports that as a result of the contemptuous conduct of the defendant during the accounting period the business, good will and advertising program of the plaintiff were damaged in the amount of $7500. Plaintiff objects to that as insufficient, and the defendant, that plaintiff has failed to prove any damage.

· Plaintiff argues that as Section 99 of 15 U.S.C.A. permits recovery of defendant's profits, as well as of plaintiff's damages, which in the discretion of the court may be tripled, the destructiveness of the defendant's unfair competition and contemptuous conduct upon plaintiff's good will, business and profits justifies a substantial increase in the amount of this particular item.

There can be no doubt as to the right of plaintiff to recover damages, as well as defendant's profits; if damages are proven; and the burden of such proof is upon plaintiff. Certainty in the fact of damage being shown, there need not be certainty in proof as to amount. It is sufficient if a reasonable basis of computation is afforded, one sufficient for a reasoned conclusion. That the result be only approximate is not fatal; the wrongdoer should not be permitted to escape because of lack of certainty. Such damages would include injury to business standing or good will, loss of business, additional expense incurred because of the tort, and all other elements of injury to the business.

As I am in accord with the master upon this branch of the case, it will serve no useful purpose to review the evidence. Suffice it to say that, with equal business opportunities, and with the expenditure by plaintiff for advertising of over $1,172,000, and by defendant of about $17,000, the net sales of plaintiff increased from $7,487,000 to $9,975,000, or by 33%, whereas those of defendant increased from $73,500 to $428,600 or by 583%. While it cannot be said that plaintiff would have made all of the sales accomplished by defendant, particularly in view of the cheaper price range of defendant's hats, yet it seems obvious to me that as a result of the confusion caused by defendant's improper advertising, and the advantage accruing to defendant's business as a result of plaintiff's extensive and nation wide advertising of its product, defendant has been enabled, at plaintiff's expense, to appropriate plaintiff's market. The extent of that appropriation cannot be determined with exactitude, but that does not free the infringer. Mishawaka Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203–207, 62 S.Ct. 1022, 86 L.Ed. 1381. The trademark owner may still recover damages in addition to defendant's profits. Necessarily, the amount of such damage is an approximation. I cannot agree with defendant's contention that the Circuit Court of Appeals has held otherwise, or that there can be a recovery for profits or damages, whichever is greater, or that Rule 16 of this Court is a bar.

### Should Plaintiff Have Been Awarded Profits on Sales Made by Defendant as the Result of Its Improper Advertisements?

No such award was made and plaintiff objects to its disallowance. It seems to be well settled that there is no presumption that the plaintiff would have made the sales accomplished by the defendant but for the contemptuous advertising. Dickinson v. O. & W. Thum Co., 6

Cir., 8 F.2d 570. In fact, it clearly appears that notwithstanding that kind of advertising, plaintiff's sales increased very materially, although in fact, so did the defendant's. However, there being no proof upon which any such award could be based, I am content to follow the master in his disallowance.

### Should the Damages be Tripled?

 It may be that there is power under Section 96 of 15 U.S.C.A. to take such action; and the Aladdin Lamp case, 7 Cir., 116 F.2d 708, may, in certain classes of action, justify such an award. But the facts shown here do not parallel those shown in the Aladdin case. There was revealed most wanton and deliberately fraudulent conduct which merited and received such action. The conduct of the defendant here was more an effort to avoid the safeguards attempted to be erected by the trial court and appellate tribunal, to prevent unfair competition and use of the plaintiff's trade mark "Stetson," in that he emphasized the name "Stetson" and minimized the notice of differentiation. Thus, as stated by the Circuit Court of Appeals, he violated the spirit of the injunction. To further protect plaintiff's well known trade mark defendant was prohibited from thereafter using the name "Stetson" except in the notice of differentiation. Defendant's action was evasive, not fraudulent. I concur in the master's denial of triple damages.

 There remains the fixing of the master's fee. He asks $3,000. His affidavit shows six hearings, one on May 7, 1943, lasting 2½ hours; the second on May 18, 1943, 6¼ hours; the third on June 18, 1943, 4½ hours; the fourth on October 5, 1943, 3½ hours; the fifth on October 15, 1943, 4¼ hours; and the last on November 5, 1943, of 6 hours. The stenographer's minutes aggregate 570 pages. Approximately eight days were spent in the examination of the briefs, the law, the exhibits and the testimony, and 34 hours were spent in the preparation of the report. For this I think a reasonable allowance would be $1500.

The few changes which I have made in this opinion require a recasting of the figures as stated by the master, and the result will be, if my mathematics are not erroneous:

| | | |
|---|---|---|
| Gross profit | | $108,859.96 |
| Less selling expenses | | 85,323.94 |
| Selling profit | | $ 23,536.02 |
| Less other expenses | | 6,274.22 |
| Net income | | $ 17,261.80 |
| Less bad debts | $6,021.17 | |
| Interest on capitalization | 1,588.84 | 7,610.01 |
| Net profit | | $ 9,651.79 |
| Add gross profit on sales booked prior to August 28, 1942 and delivered afterward | $3,891.16 | |
| Less officers' salary, etc. | 646.04 | $ 13,245.12 |
| Total profit (Carried forward) | | $ 12,896.91 |
| Add plaintiff's counsel fees | | 4,750.00 |
| Disbursements of plaintiff's counsel | | 275.58 |
| Damages to plaintiff's business, etc. | | 7,500.00 |
| Fee to special master for his services | | 1,500.00 |
| Stenographer, preparation of master's report | | 150.00 |
| Total | | $27,072.49 |

to which will be added interest from December 1, 1938.

The order to be entered hereon will be settled on notice and will in all respects comply with the applicable rules.